## Morgan *v.* Bulletin Company, Appellant.

350

Argued November 14, 1951. Before DREW, C. J., STERN, STEARNE, BELL, LADNER and CHIDSEY, JJ.

reargument re-fused February 4, 1952.

*Edwin P. Rome,* with him *William A. Gray* and *Gray, Anderson, Schaffer & Rome,* for appellant.

*Laurence H. Eldredge,* for appellee.

OPINION BY MR. CHIEF JUSTICE DREW, January 7, 1952:

As the result of an article and picture published in the Philadelphia Sunday Bulletin on November 20, 1949, Alyce Morgan, plaintiff, brought this suit for libel against the Bulletin Company. During the course of the trial the jury was discharged by stipulation of coun-·sel and the case proceeded to its conclusion with the trial judge finding for plaintiff in the sum of $10,-000. After argument before the court en banc judgment was entered on the findings and the Bulletin appealed.

Late in 1948, during the course of a special grand jury investigation of certain municipal affairs in Philadelphia, information was received by the deputy attorney general in charge concerning the activities of representatives of parking meter companies who allegedly were prepared to offer bribes to obtain contracts for the installation of their meters. An investigation was conducted which extended over a long period of time. In November, 1949, Leonard Murphy, a reporter for the Bulletin, interviewed the deputy attorney general and received permission to print an article dealing with the parking meter situation. On going over the reports Murphy came across a statement made by one Shovlin, a Philadelphia attorney, to the investigator that plaintiff was the "Mata Hari of the parking meter deals." That statement was made in a restaurant when plaintiff entered with a man named Steubig who was suspected of being a payoff man for the Twin Meter Sales Corporation, one of the companies interested in obtaining parking meter contracts. Murphy then contacted plaintiff, who was vice-president of Twin Meters, and obtained an interview with her. During the course of the interview he asked her if she was the Mata Hari of the parking meters to which she replied, "That's preposterous!" Upon completion of the interview he returned to his office and wrote up the story. He then returned with a photographer to take plaintiff's picture. She refused to be photographed unless Mr. Kitz, president of Twin Meters, was also included in the picture. This was apparently agreed to and the pictures were then taken.

The article written by Murphy was published on the first page of the Sunday Bulletin on November 20, 1949, under the banner headline "Bribe Offer Reported In Fight for Contract On Parking Meters." Immediately beneath the headline was a picture of plaintiff sitting on a table on which were placed two parking meters.

The caption under the picture stated "Miss Alice Morgan, vice president of a parking-meter sales firm, displays metering devices for which she is seeking city contract." The second sentence of the article stated: "Stories of high pressure methods, large rolls of currency waiting for a taker, and even of a woman known as the 'Mata Hari of the parking meters,' have been circulated in City Hall and have reached the ears of state officials." The article then discussed in detail some of the illegal efforts made to obtain the contract and near the end the following was set forth:

"The 'Mata Hari of the meters' story got wide circulation, and was mentioned in some investigators' reports.

"The only woman here interested in the meter business, so far as could be learned, is Miss Alice Morgan, . . . She said yesterday that she has been trying to get the city interested in meters manufactured by her firm.

"Asked if she heard reports about a 'Mata Hari,' she threw her head back and laughed heartily.

" 'That's a good one!' she exclaimed.

"She was asked if she thought her activities originated the 'Mata Mari' legend.

" 'That's preposterous,' she replied. 'I don't have any money to pay anybody. Sometimes I wonder how I'm going to pay the rent.' "

It was on the basis of that article and a follow-up article the next night in the Evening Bulletin that plaintiff brought this suit. The lower court found that the story and picture, although not libelous per se, was capable of a defamatory meaning and while the occasion was conditionally privileged the Mata Hari reference was made without reasonable and probable cause and the display was not published in a proper manner. With these findings we are in full accord.

Had the article directly stated that plaintiff was a Mata Hari there could be no doubt but that it would be

a libel. We are all well aware that Mata Hari was a notorious spy who gained her ends with public officials by use of money or her favors as the situation dictated. To accuse somebody of using those tactics without the most thorough inquiry into the truth of such an accusation would be a gross defamation. The article published by the Bulletin did not go so far as to make a direct accusation. The first question is, therefore, whether the article and picture can fairly and reasonably be construed to imply that plaintiff was the "Mata Hari of the parking meters" or was involved in the attempted bribery. In spite of the Bulletin's protestations that it published only facts as learned by its reporter, we are convinced that no other construction is possible.

The picture of the plaintiff immediately beneath the headline referring to bribe offers creates an impression that plaintiff was involved in the bribery. In the body of the story reference is made to the Mata Hari report and in the next sentence plaintiff is described as "The only woman here interested in the meter business." The natural conclusion to be drawn from that is that plaintiff must have been the "Mata Hari of the parking meters." Nor does the printing of plaintiff's denial absolve the Bulletin. As the learned court below stated in its findings: "An astonishing number of people are convicted of charges they deny, and the denial does not set them right in the public mind. A denial often lends piquancy to the story, and printing one would be an easy escape from liability if that were all there was to it."

Because of the public concern over municipal affairs the hearing judge properly found that the occasion for the publication was a conditionally privileged one. The Bulletin argues that since the occasion was conditionally privileged, plaintiff could not recover unless she showed actual malice, citing *Briggs v. Garrett*, 111 Pa. 404, 2 A. 513, where we stated, at p. 414: "A communication

to be privileged must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or probable cause. When so made, in good faith, the law does not imply malice from the communication itself as in the ordinary case of libel; actual malice must be proved before there can be a recovery." That quoted statement is undoubtedly still the law of the Commonwealth. It is, however, of little help to the Bulletin in this case. All that the lower court found was that it was a conditionally privileged, or proper, occasion. The burden still remained on the Bulletin to show reasonable and probable cause, proper manner and proper motive. The same argument which is made by the Bulletin here was also advanced by the defendant in *O'Donnell v. Phila. Record Co.,* 356 Pa. 307, 51 A. 2d 775, where it was rejected by this Court by referring to the following quotation from *Hartman v. Hyman & Lieberman,* 287 Pa. 78, 83-84, 134 A. 486: "The immunity of a privileged communication is the exception, and he who relies upon an exception must prove all the facts necessary to bring himself within it . . . Want of reasonable care and diligence to ascertain the truth, before giving currency to an untrue communication, will destroy the privilege." Thus, the other basic requirements to show a privileged communication are not removed merely because the occasion was conditionally privileged.

That the Bulletin did not have reasonable and probable cause to refer to plaintiff, even indirectly, as a Mata Hari is immediately apparent on reading the record. That information was gained only from a report which merely noted that Shovlin had so stated to an investigator. That report was made six months prior to the publication of the article. There is nothing to show that the statement was based on facts or even that there were reasonable grounds for believing it to be true. Nor is there anything to show that Shovlin's statement was investigated by the deputy attorney gen-

eral or the Bulletin. Certainly there is no basis whatsoever for the statement in the article that a story concerning the "Mata Hari of the parking meters" was being generally circulated in City Hall. Under those circumstances it is clear that the Bulletin did not have reasonable and probable cause for publishing the defamatory references to plaintiff.

We do not deem it necessary to discuss in detail the question of whether the article was published in a proper manner. From what we have said above it is apparent that it was not. A reading of the story with its accompanying picture creates the distinct impression that plaintiff is involved in the type of scandalous conduct attributed to Mata Hari. The whole layout was designed to draw attention to plaintiff and her part in the situation. An article such as this must present the truth and present it in a fair and just way if it is to avoid the stigma of libel: *Boyer v. Pitt Publishing Company*, 324 Pa. 154, 188 A. 203; *Press Company v. Stewart*, 119 Pa. 584, 14 A. 51. This the Bulletin failed to do.

No punitive damages were awarded and the Bulletin's final complaint is that the award of $10,000 as actual damages is excessive. We cannot agree. As a result of the article plaintiff was forced to surrender her position as vice president of Twin Meters and also her one-third interest in the company for the nominal sum of $500. She felt compelled to leave Philadelphia and accepted a job in Arizona where she earned only $600 the following year. She suffered great emotional upset and was placed under doctor's care for a time. All of these are proper items to consider in awarding damages and we cannot say that on this record the sum of $10,000 is an excessive award especially when we consider the damage to her reputation resulting from the publication of the article in a paper having as large a circulation as the Bulletin. Plaintiff was seriously

defamed by the article written in an improper manner and without probable cause and is entitled to the substantial recovery awarded.

Judgment affirmed.