Papieves et ux., Appellants, *v.* Kelly.

374

Argued January 12, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Harry R. Mayer,* for appellants.

*George J. McConchie,* with him *Cramp & D'Iorio,* for appellee.

OPINION BY MR. JUSTICE POMEROY, March 20, 1970:

This appeal is from an order of the Court of Common Pleas of Delaware County sustaining preliminary objections in the nature of a demurrer and dismissing plaintiff's complaint. The only facts before the Court are the averments of the complaint, and for present purposes the demurrer admits every well pleaded material fact set forth in the pleading to which it is addressed and the inferences reasonably deducible therefrom. *Schott v. Westinghouse Electric Corporation,* 436 Pa. 279, 259 A. 2d 443 (1969) ; *Eden Roc Country Club v. Mullhauser,* 416 Pa. 61, 204 A. 2d 465 (1964) ; and *Mistick v. Cammack,* 397 Pa. 296, 154 A. 2d 588 (1959).

From the complaint it appears that one Richard Papieves, the fourteen year old son of Joseph V. and Margaret Papieves (plaintiffs-appellants herein), disappeared from his home on June 11, 1965. It was subsequently discovered that on that day the Papieves boy had been struck by a motor vehicle operated by a minor,

one Owen Norman Lawrence (defendant herein). Whether Papieves was killed or seriously injured in the collision is not of record. Without attempting to obtain medical assistance and without notifying either the police or the boy's parents, Lawrence removed Papieves' body from the scene of the accident, took it to his home, and hid it in his garage. Some few days later, Lawrence contacted one Joseph J. Kelly, also a minor, and requested his assistance in disposing of the body of Papieves. Defendants Lawrence and Kelly thereupon took Papieves' body to a field near Darby Creek Road in Marple Township, Delaware County, where they dug a grave and interred the decedent. More than two months later, the partially decomposed body of young Papieves was found, and his remains were returned to his parents.

Thereafter, plaintiffs commenced this suit by filing and having served a complaint in trespass against Lawrence and Kelly, alleging that defendants' acts constituted an invasion of, and an unlawful interference with, plaintiffs' right to the possession of the decedent's body; that such acts constituted an unlawful and indecent disposal of decedent's body without the authority or consent of the plaintiffs; and that defendants had so acted with the intent to prevent the plaintiffs from discovering the fate of their son. Plaintiffs averred that as the result of the aforesaid acts they had suffered mental anguish, emotional disturbance, embarrassment, and humiliation; they sought damages in excess of $10,000 against both defendants.

Defendant Kelly filed preliminary objections in the nature of a demurrer and a motion for more specific pleadings. As indicated above, the court sustained Kelly's demurrer and dismissed the complaint. This appeal followed.[1]

---

[1] The preliminary objections in the court below were filed only by defendant Kelly although the lower court dismissed plaintiff's

In its opinion, the court below stated that it knew of no Pennsylvania cases which would allow such an action in trespass, although the court's equitable powers would have been available, if timely invoked, to prevent such interference with the plaintiffs' right to the decedent's body. Noting the rule of recovery set forth in the *Restatement of Torts*, §868 (1939),[2] the court found that this Court's adherence to the so-called impact rule set forth in *Bosley v. Andrews*, 393 Pa. 161, 142 A. 2d 263 (1958) rendered the *Restatement* rule inapplicable. We conclude that defendant's preliminary objections were improperly sustained.

Insofar as we can determine, the issue of recovery for emotional distress resulting from the mishandling of the body of a deceased relative has never before been presented to an appellate court in this Commonwealth.[3] The parties to this action have cited no apposite appellate decision, nor has our research uncovered any such case.[4] Every cause of action in tort, however, was

complaint as to both defendants. Only Kelly has filed a brief with our Court.

[2] "A person who wantonly mistreats the body of a dead person or who without privilege intentionally removes, withholds or operates upon the dead body is liable to the member of the family of such person who is entitled to the disposition of the body."

[3] In other contexts, however, the legislature has recognized the seriousness generally attached to an unauthorized interference with a decedent's body or remains. Thus it has provided that the willful and malicious opening of a tomb and the clandestine removal of any body therefrom is a misdemeanor punishable by a fine of $1,000 or imprisonment of up to three years. Act of June 24, 1939, P. L. 872, §521, 18 P.S. §4521. Similarly, the legislature has provided comprehensive regulations for the burial, distribution and use of dead human bodies and has set penalties for the violation of such regulations. See, e.g., Act of June 13, 1883, P. L. 119, as amended, 35 P.S. §1091 et seq.; Act of June 25, 1913, P. L. 564, §1, 9 P.S. §15; and Act of June 23, 1917, P. L. 637, §1(1), 9 P.S. §71.

[4] The issue has been presented to two lower courts. See *Block v. Har Nebo Cemetery Co.*, 14 Pa. D. & C. 237 (C.P. Phila. Co.

once a novel claim, and the absence of Pennsylvania authority for appellants' proposition is not an end to the issue, for a review of the *Restatement* and the law of other jurisdictions indicates that the case before us is by no means unique.

As indicated above, §868 of the *Restatement* provides that one who "wantonly mistreats" or, acting without privilege, "intentionally withholds" the body of a decedent is liable in tort to the member of the decedent's family who is entitled to the disposition of the body. Comments *a* and *b* to §868 state that such a cause of action "exists although there has been no harm except such harm to the feelings as is inseparable from the knowledge of the defendant's conduct. . . The cause of action is primarily for mental suffering caused by the improper dealing with the body. It includes also the right to recover damages for physical harm resulting from such mental suffering."

Other jurisdictions have recognized claims for mental suffering caused by the defendant's wanton or intentional mishandling of the body of the decedent. Such mishandling of a body has been found to encompass, *inter alia,* the unlawful interment or disinterment of a body, intentional interference with a burial, the wanton mutilation or unauthorized embalming of a corpse, and other intentional, reckless or wanton acts likely to cause severe emotional distress. See *Sanford v. Ware,* 191 Va. 43, 60 S.E. 2d 10 (1950) ; *Gostkowski v. Roman Catholic Church,* 262 N.Y. 320, 186 N.E. 798 (1933) ; *Stephens v. Waits,* 53 Ga. App. 44, 184 S.E. 781 (1935) ;

1930) and *Reick v. Maple Hill Cemetery Assn.,* 31 Luz. L. Leg. Rep. 213 (C.P. Luzerne Co. 1936). In the latter case, the court, at p. 215, stated as follows: "The weight of authority is to the effect that damages for mental anguish are recoverable for invasion of the different rights relating to dead bodies, although there be no actual pecuniary loss, the sense of outrage and mental suffering being proper independent elements of compensatory damages."

378

*Alderman v. Ford,* 146 Kan. 698, 72 P. 2d 981 (1937); *Sworski v. Simons,* 208 Minn. 201, 293 N.W. 309 (1940); and *Brownlee v. Pratt,* 77 Ohio App. 533, 68 N.E. 2d 798 (1946). After a review of the cases in this area, one leading authority has concluded that a distinct majority of the jurisdictions hold that "where the defendant, not privileged by statute, intentionally or recklessly invades another's interest in the body of a deceased relative by conduct which it is highly probable will cause acute and poignant emotional distress, he becomes liable therefor although no other interest of the plaintiff is invaded." Harper and James, *The Law of Torts,* §9.4, p. 675 (1956). While the decisions in other jurisdictions have frequently spoken of the next of kin's property or quasi-property rights in the body of the decedent, the underlying, and we believe real, issue is the right of a decedent's nearest relatives to protection against intentional, outrageous or wanton conduct which is peculiarly calculated to cause them serious mental or emotional distress. See *Stephens v. Waits, supra; Gadbury v. Bleitz,* 133 Wash. 134, 233 P. 299 (1925); and Prosser, "Intentional Infliction of Mental Suffering: A New Tort", 37 *Michigan Law Review* 874 (1939).

The law has only recently recognized that the freedom from mental distress directly caused by wanton or outrageous conduct is entitled to legal protection independent of any other cause of action, and recent years have seen many legal developments in this regard. Compare *Restatement of Torts,* §46 (1934) with *Restatement (Second) of Torts,* §46 (1965); see also Magruder, "Mental and Emotional Disturbance in the Law of Torts," 49 *Harvard Law Review* 1033 (1936) and Harper and James, *op. cit.,* chap. 9. We recognize that any extension of legal liability to acts which cause emotional distress is not without its problems. We also recognize that the law cannot serve to guaran-

tee all men's peace of mind; as the late Judge MA-GRUDER remarked, "Against a large part of the frictions and irritations and clashing of temperaments incident to participation in a community life, a certain toughening of the mental hide is a better protection than the law could ever be." Magruder, *op. cit.*, p. 1035. But this case is not in that category. There can be little doubt that mental or emotional disorders brought on by conduct such as that set forth in the complaint at bar may be every bit as real, every bit as debilitating as ailments which have more obviously physical causes. For this reason, the obvious and inherent difficulties of the proof, or disproof, of emotional distress and the measurement of damages for such injury are not adequate cause, standing alone, to deny recovery. We conclude that recovery may be had for serious mental or emotional distress directly caused by the intentional and wanton acts of mishandling a decedent's body which are here alleged. It goes without saying that in order to recover, a plaintiff asserting such a cause of action must be able to prove all the elements of his case by proper evidentiary standards.

Appellee Kelly presses several additional arguments in opposition to the rule which we here adopt. Initially he relies, as did the lower court, upon the impact rule set forth in *Bosley v. Andrews, supra*. That rule, at least in its most expansive form, was overturned by this Court in *Niederman v. Brodsky,* 436 Pa. 401, 261 A. 2d 84 (1970), an opinion which was filed some few days before argument in the present case was heard.[5]

---

[5] "We today choose to abandon the requirement of a physical impact as a precondition to recovery for damages proximately caused by the tort in only those cases like the one before us where the plaintiff was in personal danger of physical impact because of the direction of a negligent force against him and where plaintiff actually did fear the physical impact." *Niederman v. Brodsky, supra,* at p. 413.

Moreover, the impact rule, to the extent that it remains a viable rule of law in Pennsylvania, is inapplicable in the case now before us. As it was applied in this Commonwealth, the rule limited the scope of duty imposed upon an actor who by his negligence had imperiled the plaintiff; the rule precluded a plaintiff's recovery of damages for the negligently inflicted consequences of fright, shock or emotional disturbance absent some contemporary physical impact with, or some physical injury to, the plaintiff.

At issue in the present case is the right to recover for emotional distress which—so it is alleged—has directly resulted from defendants' intentional or wanton misconduct. Invocation of the impact rule is no more meaningful in this instance than it would have been in the areas of libel or invasion of privacy where recovery is permitted for mental or emotional distress without regard to the presence of "impact". See *Morgan v. Bulletin Company*, 369 Pa. 349, 85 A. 2d 869 (1952); *Miller v. Hubbard*, 205 Pa. Superior Ct. 111, 207 A. 2d 913 (1965); and *Aquino v. Bulletin Company*, 190 Pa. Superior Ct. 528, 154 A. 2d 422 (1959).

Appellee further urges that the appellants' appropriate form of relief was a wrongful death action,[6] but it is not, of course, an argument against one cause of action to say that a second action might also have been brought. Going further, however, appellee correctly states that no recovery has been allowed in wrongful death actions for grief and mental suffering resulting from the loss of a decedent. *Ferne v. Chadderton*, 363 Pa. 191, 69 A. 2d 104 (1949). From this, he concludes that no recovery for emotional distress should be permitted in the case before us. This position is a non

---

[6] Were the plaintiffs' cause of action one for wrongful death, there is nothing in the record before us to indicate that Kelly, the appellee, would be liable in any way.

sequitur, however, for it would have us ignore precisely that aspect of the defendants' alleged conduct which renders it tortious—its intentional and wanton character—and the extraordinary mental distress which is attributable to that conduct. That mental suffering may not be compensable in a wrongful death action grounded on a defendant's having negligently caused a decedent's death does not preclude recovery of damages in an action alleging an intentional or wanton act quite separate from any act which caused death.

Preliminary objections in the nature of a demurrer should be sustained only where it appears with certainty that upon the facts averred the law will not permit the plaintiff to recover. Plaintiffs here have averred that they have suffered emotional disturbance, mental anguish, embarrassment, and humiliation as a direct consequence of the defendants' intentional acts in withholding the body of their son from them and burying it without authorization. We hold that these averments state a cause of action cognizable in this Commonwealth sufficiently well to get by a demurrer. We express no view of course on the provability of plaintiffs' claim of liability or for damages.

Order reversed and case remanded for further proceedings.

Mr. Chief Justice BELL dissents.