## Benjamin v. Global Collection Agency

*Martin H. Aussenberg*, for plaintiffs.

*David G. Blake* and *Robert B. Surrick*, for defendants.

McGOVERN, *J.*, August 21, 1974.—This is an action in trespass, brought by husband and wife debtors against Global Collection Agency of Philadelphia and two of its employes for ordinary and punitive damages. The complaint sounds in two legal theories: the one, implied civil remedy arising from the criminal statute prohibiting unlawful collection practices (Act of June 24, 1939, P. L. 872, 18 PS §4895); and the other sounding in the intentional infliction of emotional distress. Defendants have filed preliminary objections arguing that neither ground presents a legal cause of action.

The amended complaint alleges that Global Collection Agency of Philadelphia (hereinafter termed "agency"), through its employes, defendants F. H. Kraig and Mark Hatfield, was guilty of such extreme and outrageous conduct, so as to intentionally or recklessly cause emotional distress which resulted in the alleged damages, including a loss of consortium. The complaint also seeks punitive damages against the agency and both individual defendants. The offensive conduct allegedly arose from a form collection notice forwarded by the agency and two subsequent telephone conversations.

We proceed, considering every material and relevant fact, which has been well pleaded and every inference fairly deducible therefrom in favor of plaintiffs, as is required by law: Philadelphia, to use, etc. v. Magnolia Cemetery Company, 220 Pa. Superior Ct. 424, 289 A. 2d 191 (1972). While there is some language in both briefs tending towards the treatment of

this case as one of negligence, a thorough review of plaintiffs' amended complaint confirms that the theories of recovery are founded, as first above stated, upon either implied civil remedy from a criminal statute or the tort of intentionally inflicting emotional stress.

The distinction between negligence theory and the intentional tort theory becomes significant, therefore, only in a consideration of the decisional spectrum, beginning with the now rather antiquated absolute requirement of physical impact theory of recovery and ending with the principles enunciated in the oft-cited, much discussed case of Niederman v. Brodsky, 436 Pa. 401, 261 A. 2d 84 (1970), helpful by way of its well reasoned and thorough discussion of the principles before us. The Pennsylvania Supreme Court, in Niederman, determined that there was no necessity for physical impact as a condition precedent to the recovery for bodily injury where that harm arose as a result of defendants' negligence which created an unreasonable risk of such harm. This case is significant because it finally resolves the rather classic law-school hypothesis posing the logical dilemma between allowing almost any manner of recovery, directly or indirectly, resulting from physical impact but denying recovery where serious bodily injury has occurred and where an immediate causal relation is established between the negligence and the injury, but no impact.

The reasoning and logic of the Niederman v. Brodsky, supra, is helpful, but not decisive of the issues involving intentional tort which are before us. However, many of the arguments raised by defendants in their brief, particularly as they pertain to policy concerns, have been most effectively disposed of in the Niederman case. That there is a real legal distinction is reconfirmed by the Restatement, Torts, §436(2),

adopting principles followed by the Supreme Court in Niederman, whereas the present case involves the principles of intentional tort set forth in section 46 of the Restatement.

The issue then becomes: Is there a tort recognized in Pennsylvania redressing the intentional infliction of emotional distress regardless of physical impact?

We believe that, while there may not be a positive ruling from the appellate courts of this jurisdiction concerning the issue as presented to this court, such a cause of action does, indeed, exist in Pennsylvania.

If the Supreme Court had wished positively to reject such a theory of recovery, there was ample opportunity to so do in the case of Forster v. Manchester, 410 Pa. 192, 189 A. 2d 147 (1963), which, although in equity, clearly raised the question as to whether or not a cause of action existed pursuant to §46 of the Restatement of Torts. The Supreme Court, in its wisdom, did not reject the existence of a cause of action founded in the intentional infliction of emotional distress, but rather found that the facts did not rise in the case to a level warranting injunctive relief. Plaintiff there had proceeded additionally alleging the invasion of his right to privacy. An analysis of the Forster case (wherein the court disposed of the issue on the merits) indicates that the Supreme Court presumed the existence of this cause of action and instructed that the level of proof required was a difficult burden indeed. It could be argued that specific intent to cause emotional distress, with knowledge that it is substantially certain to occur from defendant's conduct, and that defendant's conduct must be outrageous conduct, are all required elements of this tort. Indeed, in that case the insurance company's investigator, defendant Manchester, in no way intended to inflict emotional distress upon plaintiff Forster by his investigation, but probably, hoped

that plaintiff would never learn of his investigatory efforts. We do not agree that the only possible conclusion from the Forster case is a rejection by the Supreme Court of the theory relied upon here by plaintiff. If Forster is helpful at all, it did, to the contrary, at least leave the door open for further consideration of this issue. The same conclusions might be drawn from the Supreme Court's opinion in Cucinotti v. Ortmann, 399 Pa. 26, 159 A. 2d 216 (1960).

The next major step in the decisional spectrum leading to the recognition of this intentional tort is the case of Papieves v. Kelly, 437 Pa. 373, 263 A. 2d 118 (1970). There parents filed a trespass action for mental anguish and emotional disturbance caused by defendant's intentional withholding of their child's body from them and in burial without authorization. This is, of course, a rather narrow factual situation. The Supreme Court, in reversing a decision sustaining a demurrer, held that there was, in fact, a cause of action for emotional distress resulting from defendant's extreme and outrageous conduct, and the so-called physical impact rule does not preclude recovery. The Supreme Court avoided specifically sanctioning §46 of the Restatement of Torts, and reasoned that suits of this nature represent a consideration of degree. The court specifically concluded (p. 380), however, that the:

". . . Invocation of ·the impact rule is no more meaningful in this instance than it would have been in the areas of libel or invasion of privacy where recovery is permitted for emotional distress without regard to the presence of 'impact.' "

Having thus dispensed with the restrictions imposed (or supposed) by the so called physical impact rule, the Court recalled (p. 378) that:

"The law has only recently recognized that the freedom from mental distress directly caused by wanton or outrageous conduct is entitled to legal protection independent of any other cause of action, and recent years have seen many legal developments in this regard . . ."

This realization precedes acknowledgement of Judge Magruder's remark noted in defendant's brief that the best protection in today's time is a "toughing of the mental hide." This rather interesting comment of Judge Magruder, while perhaps quite true, has been totally ignored in several areas of the law. Those areas were noted in Papieves case and, while a complete litany would serve little purpose, one need only review the extent and variety of compensable damages permitted in personal injury litigation. The laws pertaining to the right of privacy, libel, slander and divorce have long recognized a legitimate and real mental pain and suffering or distress independent of physical impact. It is difficult to understand logically how such distress is any different in essence than the distress of pain and suffering. Obviously, the paramount distinction becomes embroiled in the quality and quantity of proof required and the prime cause rather than the existence of the subject itself.

Thus, from the Papieves case to the case at bar, there is not a jump from black to white, but rather a step from varying shades of gray, one to the other; a growth of judicial cognition in degrees, which is the wisdom of our jurisprudential development.

We are not unaware that other lower courts have wrestled with the same problem and reached a similar conclusion. We note the striking similarity in the case of Lutz v. Brookline Savings & Trust Company et al., 117 Pitts. L.J. 239 (1969), an Allegheny County Court

discussion of the same issue, where the court not only confirmed the existence of a cause of action under the rules set forth in §46 of the Restatement of Torts but, in addition, confirmed the allowance of punitive damages. That court, following the case of Kohl v. Graham, 202 F. Supp. 895 (D. C. Colo., 1962), ruled that, since the loss of consortium was a personal injury sustained by husband, it was appropriate for the husband to receive punitive damages where the wife was injured. The Lackawanna County Court, in Anderson v. G. A. C. Consumer Discount Co., 53 D. & C. 2d 464 (1971), likewise acknowledged the existence of this cause of action and found that the rule had been adopted in Pennsylvania by the decisions in the Forster and Cucinotti cases, both supra. The legal import of the Anderson case, however, is directed toward the survival of this cause of action after plaintiff's death. Franklin County, in the matter of Bland v. Bland, 50 D. & C. 2d 44 (1970), in a well-stated opinion, concluded that a cause of action may be predicated upon §46 of the Restatement of Torts.

We should, in fairness, discuss briefly the policy considerations extensively raised in defendants' briefs and at argument. The "tough hide argument" might indeed be a well-considered policy in law. However, it can be a just policy only if it is justly applied to all areas of the law. If on the other hand it is selectively applied to difficult or new areas as a counter-argument to the consideration of social concerns, then such a selectively applied rule would be patently unfair. The decision in the case at bar is no more than an extension of principle along the spectrum of compensatory damages allowed for intentional conduct. Certainly the degree of injury will be a key concern, as will be the degree of conduct. Objective manifestation of injury or the lack thereof may indeed be an element to be

considered—the mental distress created by pain and suffering or reputational damage. It is difficult to see why the problematical concerns contained in a suit of this nature should dissuade us here when it has not dissuaded us in other areas of litigation. Consider some of the very complicated and complex elements of damages involving both personal and corporate losses. We note that juries will not be permitted to speculate in their consideration of damages in this category of tort any more than they are permitted to speculate in other areas of damages. Damages are as probable here as in any other area allowing recovery for injury not immediately obvious. The chain of causality is equally essential to a cause of action founded in this intentional tort, as it is in negligence or any other area of law. Causality most certainly must be clearly and preponderantly established. We are, in all honesty, unable to intelligently discern any policy sufficient to logically dissuade the conclusion of the existence of a cause of action for the intentional infliction of emotional distress.

Therefore, in light of the foregoing, and considering the development of jurisprudence in this Commonwealth, both reason and logic compel us to conclude that a cause of action may properly be founded upon the intentional causing of mental distress.

An adjunct issue to the foregoing conclusion that a cause of action is properly so founded is whether punitive damages are appropriately included as a remedy in such a cause of action. Punitive damages, defined in §908 of the Restatement of Torts, are non-compensatory damages awarded *against* (as distinguished from the usual situation of awarding damages "for" ) an individual as punishment for outrageous conduct. *Outrageous conduct* has been defined as such acts that are done with a bad motive or reckless indif-

ference to the interests of others. The definition appears confirmed in Pennsylvania: Focht v. Rabada, 217 Pa. Superior Ct. 35, 268 A. 2d 157 (1970). Further, the disregard of the safety of others where conduct involves such a high degree of possibility of serious harm and where the actor knows that fact as being in the range of possible results of the actor's recklessness, punitive damages are properly considered. Further, it has been observed that "where injuries are inflicted intentionally or occur through carelessness or negligence amounting to a wrong so reckless and wanton as to be without palliation or excuse," exemplary damages are properly considered. See: 11 P. L. Encyc. 105, §14.

A careful comparison of the purpose of punitive damages and the elements which give rise to the proper judicial consideration of those damages with the essential elements of a properly averred cause of action founded in the intentional causing of mental distress would be precluded by sustaining preliminary objections. It seems clear that a consideration of the elements required for a properly alleged cause of action founded in this intentional tort must, a fortiori, carry with it the potential consideration of punitive damages. The adequacy of the degree of proof will, of course, finally determine whether or not punitive damages are appropriate in a given case.

The point of consideration must now focus upon whether or not plaintiffs have sufficiently averred the elements necessary to establish a cause of action founded upon the intentional infliction of mental distress.

Plaintiff filed an amended complaint following the preliminary objections but prior to argument. An examination of that amended complaint indicates the elements outlined in §46 of the Restatement of Torts

have been sufficiently, if barely, alleged. Plaintiffs' amended complaint alleges extreme and outrageous conduct intentionally inflicted or done with such reckless disregard of its natural and probable consequences as to cause severe emotional distress and bodily harm. There are alleged no specific items of medical damage but bodily harm is alleged. Plaintiffs rely fundamentally upon a claim for emotional distress. Whether or not the conduct is sufficient to meet these elements is a matter for proof at trial, but we conclude from the allegations of the amended complaint that liability is sufficiently possible to allow the matter to proceed. This being so as to the individual defendants, plaintiff has sufficiently alleged agency so as to maintain, at this stage of the matter at least, an action against defendant agency by averring that this conduct was performed within the scope of defendant employes' employment. Loss of consortium is a legitimate recognized item of damage and one which is personal to husband plaintiff. A cause of action in his behalf has also been averred. The nature of this tort and the allegations of outrageous and extreme conduct are sufficient, we believe, to raise the issue to punitive damages. We note, of course, as we have consistently and constantly throughout, whether or not these items are proven and whether or not they are causally related will depend upon the nature and extent of proof produced at trial. It is interesting that there appears a logical connection and by sequential reasoning bringing one from the recognition of this intentional tort to the conclusion that punitive damages are properly includable. The distinction between ordinary and punitive damages here, then, is one of degree—not substance of proof. It is difficult, indeed, to see what additional allegations would be required (positing a well-pleaded action of intentional tort) beyond that

which has been set forth. We are, therefore, of the opinion that punitive damages have been sufficiently pled so as to overcome defendants' preliminary objections. We specifically avoid consideration of whether or not the two telephone calls, as alleged, and the language used by defendant employes were sufficient to rise to a level warranting recovery; and whether the scope of employment is broad enough to include defendant agency in a category of liability. These considerations exceed the limits of judicial review of preliminary objections and must be properly disposed of at trial: Philadelphia v. Magnolia Cemetery Company, supra. We do find, however, that a cause of action exists and that the allegations of plaintiff's complaint, while they could be more factually detailed, sufficiently aver a cause of action grounded in that intentional tort.

There remains for our consideration the separate and distinct cause of action alleged, the gravamen of which is that the Pennsylvania Unlawful Collection Practices Act, a criminal statute, gives rise to an implied civil remedy. Plaintiffs contend that to disregard the statute is a wrongful act. Where such wrongful act results in damage to another and, where the conduct alleged is within the purview of the statute, then such gives rise to a civil remedy sounding in trespass. While there may be some ephemeral acceptance of this concept in Pennsylvania jurisprudence, it has not been accepted as pertinent to the allegations presented here. Plaintiff's heaviest reliance lies in the area of Federal legislation and regulation. There it is soon discovered that the so-called implied civil remedy, if not specifically stated in fact, can be easily and clearly inferred from the tenor of the legislation or regulation. We do not find in the criminal statute cited any language other than the definition of the crime and the punishment intended. We are compelled to take the clear and obvious meaning of that criminal

statute and conclude that it would be judicial legislation based upon rather drastic speculation to extend Pennsylvania's Unlawful Collection Practices Act, supra, to the establishment of a civil remedy founded in trespass, implied or otherwise. No civil remedy has ever been suggested upon the passage of this act. We believe that if legislation was intended to create a remedy in addition to the penalty therein stated it simply could have and would have been drafted accordingly. We are unable to discern any language allowing the inference or implication suggested by plaintiff.

While the complaint is replete with conclusions of fact and of law, we find that there are sufficient facts alleged to support a claim against defendants and, in light of the foregoing, we, therefore, enter the following

## ORDER

1. Defendants' preliminary objections are sustained insofar as the complaint alleges a cause of action exists as a result of a civil remedy implied from the Pennsylvania Unlawful Collection Practices Act, a criminal statute; and, specifically, defendants' preliminary objections are sustained as to counts two, three (insofar as it relates to alleged violation of the Unlawful Collection Practices Act), five and six of plaintiffs' amended complaint.

2. Defendants' preliminary objections are dismissed as to the allegations of plaintiffs' complaint relating an intentional infliction of emotional distress, punitive damages therefor and loss of consortium therefrom; and, specifically, defendants' preliminary objections to counts one, three (insofar as it is founded in the intentional tort alleging intentional infliction of emotional distress), and four are dismissed.

3. Defendants are directed to file an answer within 30 days from the date of this order.