# Peterman v. Geisinger Medical Center

*Samuel D. Clapper*, of *Barbera and Barbera*, for plaintiffs.

*James H. Thomas*, of *Thomas and Thomas*, for defendants.

MYERS, *P.J.*, November 15, 1978—Briefly summarized, plaintiffs' complaint in this action alleges that plaintiff, Robert E. Peterman, was examined on or about December 20, 1974, by medical personnel of defendant Geisinger Medical Center. Subsequently, Mr. Peterman received a letter asking him to report to Geisinger for an appointment.

Plaintiffs further claim that on or about January 6, 1975, Mr. Peterman reported for the appointment. He was then informed by defendant, C. W. Konvolinka, M.D., that an X-ray report of his colon indicated the presence of a tumor. Dr. Konvolinka advised immediate surgery.

Plaintiffs' complaint further alleges that Mr. Peterman was operated on by Dr. Konvolinka on January 20, 1975. During the course of the operation, the surgeon was unable to find any trace of a tumor, and he therefore telephoned the radiology department, which confirmed the presence of a tumor in Mr. Peterman's colon.

According to plaintiffs' complaint, while the surgery was still continuing, the radiology department then informed Dr. Konvolinka that their initial report had been in error, and that there was in fact no evidence of a tumor in Mr. Peterman's colon. Immediately after the surgery, Mr. Peterman and his wife were advised of the mistake by Dr. Konvolinka.

Plaintiffs further allege that while Mr. Peterman was still hospitalized, an officer of Geisinger Medical Center approached him on several occasions and offered him various sums of money if his wife and he would sign a form releasing Geisinger from liability. The Petermans refused to sign.

According to plaintiffs, in recommending and performing surgery on Mr. Peterman, Dr. Konvolinka relied on an X-ray report belonging to another patient. The X-ray report entered on Mr. Peterman's records disclosed an incidental finding of "in uterine fibroids," which occur only in the body of a female.

Defendants filed preliminary objections to the complaint, which are now before the court for disposition. The objections challenge: (1) the averment of damages as to Mrs. Peterman; (2) the various assumpsit counts of the complaint; (3) the lack of specificity in the complaint; and (4) the claim for punitive damages based on Geisinger's alleged bad faith.

(1)

Paragraph 34(m) of plaintiff's complaint seeks damages for the pain and anguish which Mrs. Peterman allegedly suffered as a result of the unnecessary operation on her husband. Defendants assert that this claim for damages represents an

unjustified extension of the rule announced in Niederman v. Brodsky, 436 Pa. 401, 261 A. 2d 84 (1970). We agree.

In Niederman, the Pennsylvania Supreme Court rejected the rule which required physical impact as a prerequisite for recovery. The court therein stated: "We today choose to abandon the requirement of a physical impact as a precondition to recovery for damages proximately caused by the tort in only those cases . . . where the plaintiff was in personal danger of physical impact because of the direction of a negligent force against him and where plaintiff actually did fear the physical impact." Id., at 413.

In the instant case, there are no allegations in the complaint that Mrs. Peterman was in any danger , or that she actually feared any physical impact. Accordingly, recovery should not be permitted under these circumstances. See also Bowman v. Sears, Roebuck & Co., 245 Pa. Superior Ct. 530, 369 A. 2d 754 (1976).

Plaintiffs maintain, however, that their claim on behalf of Mrs. Peterman is not based on fear of actual physical injury. Rather, plaintiffs contend that Mrs. Peterman's claim is independent, and arises from the emotional distress which she suffered as a result of defendants' reckless conduct. Even viewed in this light, we consider Mrs. Peterman's claim to be without merit.

The appellate courts in Pennsylvania now appear to recognize a tort based upon the intentional or reckless infliction of severe emotional distress. See Papieves v. Kelly, 437 Pa. 373, 263 A. 2d 118 (1970); Restatement, 2d, Torts, §46 (1965).

However, even if there is a right to recover for

intentional or reckless infliction of emotional distress, Mrs. Peterman has no claim for such damages because defendants' allegedly outrageous conduct was not directed toward her.

In all of the illustrations appearing in Comment d, Restatement, 2d, Torts, §46, the person entitled to recover is the individual who was directly subjected to the outrageous conduct. In the instant case, however, the alleged outrageous conduct was directed at Mr. Peterman, not Mrs. Peterman.

If Mrs. Peterman is entitled to collect damages under the circumstances of the present case, then anyone could recover who was emotionally distressed by the news of the diagnosis herein. Presumably, Mr. Peterman's children, relatives, and friends could also seek damages for whatever distress they may have suffered.

In our view, the law does not contemplate recovery by persons standing in such positions. Hence, we sustain the preliminary objections related to the claims on behalf of Mrs. Peterman.

(2)

Counts III, IV, and V of the complaint allege the existence of contractual relationships between Mr. Peterman and defendants. In their preliminary objections, defendants assert that the contract counts should be stricken as redundant.

Plaintiffs concede that the contract claims essentially duplicate the tort counts. Further, plaintiffs concede that the case is primarily a tort matter, and that the governing principles fundamentally sound in tort.

Nonetheless, plaintiffs urge the court to overrule

the preliminary objections, with the understanding that plaintiffs will withdraw the contract counts before the case is submitted to the jury, absent some unexpected development whereby the distinction between tort and contract might conceivably become significant.

In our view, however, the contract claims are redundant and, as such, should be dismissed. The gravamen of plaintiffs' action is in tort, and therefore one properly instituted and maintained in trespass: Friedline v. Bryan, 26 Cumb. 231 (1975); see also Universal Film Exchanges, Inc. v. Hirsh, 21 D. & C. 2d 154 (1960).

### (3)

Plaintiffs' motion for more specific complaint challenges the lack of specificity of the allegations contained in paragraphs 34(b), 34(d), 34(f), and 34(k) of the complaint.

We conclude that the complaint is sufficiently precise. If defendants desire additional information, they may avail themselves of discovery procedures.

### (4)

Count VII of the complaint seeks punitive damages from Geisinger Medical Center based upon alleged efforts to obtain releases from plaintiffs following the operation. Defendants demurred to count VII, on the theory that plaintiffs cannot recover punitive damages in the absence of allegations that they suffered compensatory damages as a result of defendants' alleged attempts to secure releases.

Defendants suggest that the offers of money do

not constitute an independent tort for which compensatory damages could be awarded. Hence, defendants argue that these settlement offers cannot provide a foundation for punitive damages.

Clearly, however, the complaint avers that the damages suffered by plaintiffs were the cumulative result of defendants' reckless and negligent conduct, including the post-surgery attempts to obtain releases. (See paragraphs 27-32 of the complaint.) Although the release offers were not a separate tort, they allegedly contributed, cumulatively, to the damage caused to plaintiffs.

Under such circumstances, the demurrer to count VII must be denied.

## ORDER

And now, November 15, 1978, it is hereby ordered and decreed that paragraph 34(m) be stricken from the complaint, and that counts III, IV, and V be dismissed. The remaining preliminary objections are hereby denied.

Defendants are hereby granted leave to file an appropriate responsive pleading within 20 days of service of this order.