## Glassman v. Herman

*Robert Madow*, for plaintiff.
*David Comroe*, for defendant.

LEDERER, *J.*, January 11, 1982—This opinion is filed pursuant to the provisions of Pennsylvania Rule of Appellate Procedure 1925 which requires a judge, upon receiving notice of appeal from one of his orders, to file an opinion in support of the order.

On February 5, 1981, this court dismissed the counterclaim of defendants Phillip Herman and Celia Herman, his wife, to the complaint of plaintiffs.

## BACKGROUND

The background of the litigation is as follows:

In June 1978, the parties entered into a written agreement whereby the Hermans (defendants) agreed to sell and the Glassmans (plaintiffs) agreed to buy premises at 6732 Sylvester Street, Philadelphia for $30,000.

Defendant, Grife and Slutzky Realtors, acted as broker in the transaction. This defendant was not affected by the court's order and is not involved in this appeal.

Settlement on the sale/purchase agreement was held in September 1978. In their complaint, plaintiff buyers allege that following settlement and upon commencing planned renovations, they discovered substantial wall cracks after removal of wallpaper from some of the rooms of the dwelling.

They allege that during sale/purchase negotiations, defendant sellers represented the property to be structurally sound. They allege that defendant sellers kept the defective condition of the premises

from the knowledge of plaintiff buyers, who purchased in reliance upon defendant sellers' representations.

It is alleged that defendants referred plaintiffs to Grife and Slutzky Realtors and that prior to settlement the broker represented it had inspected the premises, found them to be in good condition, and that the asking price of the premises was fair.

Plaintiff buyers allege that the structural defects made the property unsafe for occupancy and that this unsafe condition was known to but not disclosed by the broker.

Defendant broker denies the basic allegations, states that the male defendant seller and male plaintiff buyer were co-workers who negotiated for the sale themselves, that the broker was contacted only to prepare a sale/purchase agreement, obtain financing and attend settlement.

Defendant broker states it was not paid any commission on the sale, and that any inspection made would have been undertaken by the mortgage company to determine the fair market value of the premises.

Defendant sellers filed preliminary objections to plaintiff buyers' complaint on the ground it pleaded a sale/purchase agreement and attached the deed but not the agreement, and that the agreement, which sounds in assumpsit, claims punitive damages which is a tort remedy.

These preliminary objections were dismissed by Honorable Frank J. Montemuro, Jr. Defendant sellers then answered plaintiff buyers' complaint and added new matter and a counterclaim. The new matter alleges defendant sellers are elderly, that male plaintiff buyer got to know the premises intimately over long years of association with male defendant seller, and that the sales agreement

acknowledges that plaintiff buyers had inspected the premises or had waived the right of inspection.

Defendants' counterclaim repeats the aged condition of sellers, states they are easily distressed emotionally and that the buyers' conduct in urging the sellers to dispose of their property and thereafter accusing sellers of perpetrating a fraud upon buyers has caused them severe emotional distress and suffering for which sellers demanded damages in excess of $10,000.

Plaintiff buyers filed preliminary objections to the counterclaim stating that even if the facts alleged therein are true, no legal cause of action is asserted.

On July 18, 1980, the court, being of the opinion that plaintiffs' preliminary objections had not been answered, dismissed the counterclaim. Upon being advised that the preliminary objections had been answered, which answer had not been forwarded with the file papers, the court rescinded its action and undertook to reconsider the objections and answer filed thereto.

Thereafter on February 25, 1981, the court reentered its original order dismissing the counterclaim. At the time the court entered its final order dismissing the counterclaim, it had the benefit of a 72-page deposition of the male plaintiff buyer taken on June 5, 1980.

## DISCUSSION

" . . . section 46 of the Restatement, 2d Torts (1965) provides:

'One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.'

Thus, there are four elements to the action under 46: (1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe. Although the Pennsylvania Supreme Court has not as yet specifically adopted in its entirety the Restatement's formulation and comments, Pennsylvania courts have signalled their acceptance of this evolving tort: Papieves v. Lawrence, 437 Pa. 373, 263 A. 2d 118 (1970); Forster v. Manchester, 410 Pa. 192, 189 A. 2d 147 (1963); Jones v. Nissenbaum, Rudolph & Seidner, 244 Pa. Superior Ct. 377, 368 A. 2d 770 (1976). In light of the extant case law, we believe that the black letter rule of 46 of the Restatement, along with the interpretive comments, may be applied as the basis in Pennsylvania law for the tort of intentional infliction of emotional distress.

According to comment d of the Restatement, it has not been sufficient for a finding of liability that 'the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice.'

Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community: Restatement, 2d, Torts, 46, comment d." (Chuy v. Philadelphia Eagles Football Club, 595 F. 2d 1265 at 1273, 1274 (1979) ).

"Section 46 does not recognize liability for mere negligent infliction of emotional distress. See Conway v. Spitz, 407 F. Supp. 536 (E.D.Pa. 1975)" (Chuy, supra, at 1275).

The tortious infliction of mental distress "can

result from either intentional or negligent conduct. For intentional infliction to occur, there must be intentional, outrageous or wanton conduct, peculiarly calculated to cause serious mental or emotional distress: Papieves v. Kelly 437 Pa. 373, 378, 263 A. 2d 118 (1970). See also Restatement, 2d, Torts, §46." Beidler v. W.R. Grace, Inc., 461 F. Supp. 1013 at 1016 (1978).

As stated in Beidler, the conduct alleged in defendants' counterclaim "is not the type of extreme, outrageous conduct that gives rise to a cause of action. Thus plaintiff has not stated a cause of action for intentional infliction of mental or emotional distress. Nor has plaintiff stated a claim for negligent infliction of mental or emotional distress. For such a cause of action to lie, there must be, if not contemporaneous physical impact, at least personal danger of physical impact from the negligent force and fear of physical impact: Niederman v. Brodsky, 436 Pa. 401, 261 A. 2d 84 (1970); Papieves v. Kelly, supra." (Beidler, supra, at 1016)

## DISPOSITION

Because defendants' counterclaim did not measure up to the tests required under the law, the court dismissed the counterclaim.