Geoffrey SCHACHTER, by Nancy SCHACHTER, as Conservator of the Estate and Person of Geoffrey Schachter, and Nancy Schachter, Individually

v.

MOSS REHABILITATION HOSPITAL, et al.

Civ. A. No. 88–0865.

United States District Court, E.D. Pennsylvania.

Sept. 20, 1988.

James D. Fornari, New York City, R. David Walk, Jr., Philadelphia, Pa., for plaintiffs.

Anthony F. Zabicki, Jr., Mary Ellen Reilly, Philadelphia, Pa., for defendants.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

Plaintiffs, Nancy Schachter as Conservator of the Estate and Person of Geoffrey Schachter, and Nancy Schachter, Individually, brought suit alleging medical malpractice with respect to defendants' treatment of Geoffrey Schachter at Moss Rehabilitation Hospital ("Moss") in November, 1986. In March, 1988, the defendants moved to dismiss plaintiffs' complaint for failure to state a claim upon which relief could be granted. The parties then agreed to allow plaintiffs to file an amended complaint. Accordingly, defendants' motions to dismiss were denied as moot.

Defendants have now entered new motions to dismiss on the grounds that the amended complaint fails to state a cause of action on behalf of Nancy Schachter and that it improperly includes an ad damnum clause. In their motions, defendants request that the court award counsel fees to the defendants for the cost of refiling their motions to dismiss.

### Plaintiffs' Amended Complaint

The plaintiffs' factual allegations are as follows: Geoffrey Schachter was admitted to Moss on November 12, 1986 to receive rehabilitative treatment for injuries sustained in a motor vehicle accident on August 30, 1986. (Para. 14). Mr. Schachter's condition was improving prior to his admission to Moss, but his doctors were concerned that he might injure himself if, in the absence of adequate supervision, he were to attempt to stand up or move about. Medical personnel at Moss were explicitly advised prior to his admission that Mr. Schachter should "not be left alone under any circumstances because he might involuntarily attempt to stand or otherwise move on his own, which would or could severely injure him." (Para. 16).

Defendants ignored these instructions and failed to provide adequate supervision of Mr. Schachter. (Para. 18). During the first forty-eight hours of his stay at Moss, Mr. Schachter fell out of his wheelchair, resulting in his severe injury. (Para. 19). Defendants continued to supervise Mr. Schachter inadequately during the remainder of his treatment at Moss, and, at various times, provided Mr. Schachter with improper medication. (Paras. 19, 30).

Ms. Schachter experienced severe emotional distress as a result of defendants' intentional and reckless conduct in treating her son. (Para. 32) On that basis, she seeks damages under Pennsylvania law for intentional infliction of emotional distress. (Para. 31). The complaint requests $20 million for injuries sustained by Mr. Schachter, and $5 million for injuries sustained by Ms. Schachter.

### Discussion

For the purposes of defendants' motions to dismiss, the plaintiffs' allegations are assumed to be true. *See, e.g., Labov v. Lalley*, 809 F.2d 220 (3d Cir.1987). The central issue raised by defendants' motions is whether Pennsylvania law permits a mother to recover for emotional distress caused by the willful or reckless medical treatment of her son. To reach this issue, this court must determine the circumstances under which a third party may recover for the emotional distress that results from conduct directed at another party. More particularly, this court must decide whether a recent decision by the Pennsylvania Superior Court has eliminated all barriers to third party emotional distress claimants where the conduct complained of is intentional rather than negligent.

Over the past twenty years, Pennsylvania courts have addressed the problem of emotional distress to a "third party" by developing a number of intricate rules that have been subject to continuous refinement. Prior to 1970, the Supreme Court of Pennsylvania applied the so-called "impact rule" which allowed a person to recover for emotional distress only if the distress "was accompanied by a physical injury or impact upon the complaining party." *Kazatsky v. King David Memorial Park*, 515 Pa. 183, 527 A.2d 988, 992 (Pa.1987) (citations omitted). The court subsequently adopted the less restrictive "zone of danger" requirement that permitted a person who was not physically injured to recover if the person nonetheless was within "the zone of danger" created by the defendant's conduct. *See e.g., Niederman v. Brodsky*, 436 Pa. 401, 261 A.2d 84 (1970). More recently, the Court has apparently authorized recovery for emotional distress if a third party actually witnesses a severe injury to a close relative. *See Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979).

None of the Pennsylvania Supreme Court decisions formulating limitations on third-party recovery for emotional distress has distinguished between negligent and intentional conduct. Plaintiffs argue, however, that these limitations apply only to circumstances of *negligent* infliction of emotional distress. Plaintiffs rely on a recent decision by the Superior Court, *Hackett v. United Airlines*, 364 Pa.Super. 612, 528 A.2d 971 (1987), that remarked, in dicta, that the impact rule—the predecessor of the "zone of danger" requirement—is inapplicable to cases of *intentional* infliction of emotional distress. On this basis, plaintiffs contend that there is no barrier at all to third-party claims of intentional infliction of emotional distress.

To assess plaintiffs' claim, I will first discuss the tort of intentional infliction of emotional distress under Pennsylvania law and then examine the applicability of Pennsylvania's third-party recovery rules to that tort.

### The Tort of Intentional Infliction of Emotional Distress

Pennsylvania's jurisprudence regarding the tort of intentional infliction of emotional distress is a hazardous thicket.[1] Within

---

**1.** The tort of intentional infliction of emotional distress derives from section 46 of the Restatement (Second) of Torts. Section 46 of the Restatement provides:

the past year, the Pennsylvania Supreme Court and the Pennsylvania Superior court have issued conflicting opinions as to whether the cause of action exists at all.[2] Assuming, for present purposes, that the tort is viable in Pennsylvania,[3] there remains the further question whether a third party may recover for distress caused by intentional conduct directed at another person.

### Third-party Recovery for Emotional Distress in Pennsylvania

In *Hackett v. United Airlines, supra,* the Superior Court indicated that third-party claims of *intentional* infliction of emotional distress are not hedged about by impact rules or zones of danger. The Superior Court affirmed the Court of Common Pleas' ruling that the plaintiff could not recover for the *negligent* mishandling of a relative's corpse. In reaching this decision, the court relied on another case involving the mishandling of a corpse, *Papieves v. Lawrence,* 437 Pa. 373, 263 A.2d 118 (1970), one of the first cases in which the Pennsylvania Supreme Court discussed[4] a cause of action under Pennsylvania law for intentional infliction of emotional distress. The *Hackett* court maintained that *Papieves* allowed recovery for the distress of a third party not as a result of the special circumstances involving the disturbance of a corpse, but on the basis that the defendant's conduct was intentional:

> Clearly, then, the Supreme Court's rejection of the impact rule in *Papieves* did not hinge upon the fact that the cause of action before it involved the mishandling of the dead, but upon the fact that an *intentional* tort was being alleged. The impact rule, and its modifications, only apply to negligence actions. 528 A.2d at 974.

Although *Hackett* supports plaintiffs' assertion that there is no impact requirement for claims of intentional infliction of emotional distress, *Hackett* seems to be in considerable tension with the Pennsylvania Supreme Court's ruling in *Kazatsky v. King David Memorial Park,* 515 Pa. 183, 527 A.2d 988 (1987).[5] *Kazatsky* does not draw

---

Outrageous Conduct Causing Severe Emotional Distress

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

(2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress

(a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or

(b) to any other person who is present at the time, if such distress results in bodily harm.

Pennsylvania, like other jurisdictions, has fashioned its own approach to the tort apart from the language of Section 46.

**2.** *Compare Kazatsky v. King David Memorial Park,* 515 Pa. 183, 527 A.2d 988, 995 (1987) ("[W]e again leave to another day the question of the viability of section 46 in this Commonwealth") *with Rinehimer v. Luzerne County Community College,* 372 Pa.Super. 480, 539 A.2d 1298, 1305 (1988) ("It is well settled in Pennsylvania that a cause of action for intentional infliction of emotional distress is made out where the conduct in question is 'so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community....'") (quoting *Jones v. Nissenbaum,* 244 Pa.Super. 377, 383, 368 A.2d 770, 772 (1976) (quoting Restatement (Second) of Torts, 46, comment d (1965)).

**3.** Although *Kazatsky* declared that the Pennsylvania Supreme Court has not "specifically adopt[ed]" the tort of intentional infliction of emotional distress, the language of the opinion did not foreclose lower courts from entertaining such an action. Thus, despite the fact that *Rinehimer v. Luzerne County Community College,* 372 Pa.Super. 480, 539 A.2d 1298, 1305 (1988), may have overstated the acceptance of the tort in Pennsylvania, *see supra* note 2, *Rinehimer* at minimum suggests that the tort is viable in Pennsylvania absent a declaration to the contrary by the Pennsylvania Supreme Court.

**4.** In the most recent Pennsylvania Supreme Court decision regarding the tort of intentional infliction of emotional distress, *Kazatsky v. King David Memorial Park,* 515 Pa. 183, 527 A.2d 988 n. 1 (1987), the court emphasized that the *Papieves* decision rested not on section 46 of the Restatement (Second) of Torts, but on section 868 of the First Restatement.

**5.** *Kazatsky,* too, acknowledges that the "impact" requirement has been modified, *see supra* note 3, but does not go so far as to abandon the "zone of danger" requirement altogether.

*Hackett*'s sharp distinction between claims of intentional and negligent infliction of emotional distress. Instead, *Kazatsky* seems to view the impact rule, and its subsequent modifications, as equally applicable to claims of negligent and intentional infliction of emotional distress. Under the Pennsylvania Supreme Court's approach, both types of claims are subject to the analysis of *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979) (delineating special circumstances under which a claimant outside the "zone of danger" may recover for emotional distress).[6]

There is no obvious reconciliation of the views expressed by the Pennsylvania Superior Court in *Hackett* and the Pennsylvania Supreme Court in *Kazatsky*. The first prescribes a *per se* rule that would remove the impact requirement for all claims of intentional infliction of emotional distress; the second recites, as a matter of current jurisprudence, that recovery under section 46 is "highly circumscribed," 527 A.2d at 991, and that a person may not recover for conduct directed at a third party unless the circumstances of the claim fall within a set of well-established exceptions to the "zone of danger" rule carved by the Pennsylvania Supreme Court.

Given the fact that these two opinions were so close in time,[7] it seems a prudent course to regard the *Kazatsky* decision by the Pennsylvania Supreme Court as the controlling authority.[8] Thus, plaintiffs can state a cause of action for Ms. Schachter's emotional distress only if they can demonstrate that Ms. Schachter was within the "zone of danger" of defendants' conduct or if the circumstances of her injuries fall within a recognized exception to the "zone of danger" requirement.[9] Because plaintiffs have not demonstrated that either of these two conditions has been met, I find that the plaintiffs have not stated a cause of action for intentional infliction of emotional distress under Pennsylvania law. *Cf. Odesser v. Continental Bank*, 676 F.Supp 1305, 1316 (E.D.Pa.1987) (predicting, in light of the gradual and unexpansive development of the tort of intentional infliction of emotional distress in Pennsylvania, that Pennsylvania courts would not recognize a further exception to its "impact rule" for fraudulent seizure of control of a business interest).

6. Mrs. Schachter's claim of emotional distress does not meet the requirements for recovery outlined in *Sinn* because Mrs. Schachter did not actually witness her son's fall. *See* 404 A.2d at 686.

7. *Kazatsky* and *Hackett* were decided June 15, 1987 and July 13, 1987, respectively. A recent Superior Court decision might, in some circumstances, be regarded as a more authoritative statement of Pennsylvania law than a substantially older decision by the Pennsylvania Supreme Court (especially if the Superior Court were to undertake to explain the erosion of the earlier case's authority); but *Kazatsky* is certainly too new to be disregarded by a federal court.

8. Moreover, the concerns animating the *Kazatsky* decision are readily harmonized with the decision in *Papieves* to eliminate the "zone of danger" requirement for cases involving the mishandling of a corpse. The central fear expressed in *Kazatsky*, both by the majority and Justice Hutchison, concurring, is that section 46 provides insufficient guidance for determining whether a particular claimant is eligible to recover. This fear is no doubt exacerbated when the person seeking recovery is a third party—i.e., not the party at whom the outrageous conduct was directed. Nonetheless, a relative of a deceased person need not be regarded as a third party in cases involving the disturbance of a corpse. In our culture, it is chiefly for the living that the disposition of the dead is of moment. Thus, when a corpse is improperly disturbed by a negligent or intentional actor, that action is properly regarded as conduct directly injuring those who are moved by affection and kinship to make sure that the rites of burial are appropriately observed.

This analysis is bolstered by the declaration in *Kazatsky* that *Papieves* did not involve a claim under section 46, because recovery in that case was based on section 868 of the Restatement (First) of Torts, "which provides for liability to a decedent's family member for the wanton mistreatment or intentional withholding of that decedent's corpse." 527 A.2d at 988 n. 1. This language in *Kazatsky* undermines the assertion in *Hackett* that *Papieves* "did not hinge upon the fact that the cause of action before it involved the mishandling of the dead." 528 A.2d at 974.

9. The only exception that the Pennsylvania Supreme Court has endorsed unambiguously allows recovery by a parent who has witnessed the violent death of his or her offspring. *See Kazatsky*, 527 A.2d at 993 (citing with approval *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979)).

Thus, defendants' motions to dismiss plaintiffs' claim of intentional infliction of emotional distress will be granted.

### Plaintiffs' Ad Damnum Clauses

Local Rule 30 of this court states that "[n]o pleading asserting a claim for unliquidated damages shall contain any allegation as to the specific dollar amount claimed...." Accordingly, the $20 million dollar ad damnum in ¶ 25 of the amended complaint and in the final ("WHEREFORE") paragraph will be stricken. Ms. Schachter's ad damnum of $5 million dollars is of course mooted by the dismissal of her cause of action.

### Sanctions

Defendants maintain that plaintiffs should refund the costs and counsel fees incurred by defendants in refiling their motions to dismiss. I do not regard plaintiffs' assertion that *Hackett* permits them to recover for Ms. Schachter's emotional distress as a sanctionable claim. Thus, defendants' request for sanctions will be denied.

An appropriate order follows this Memorandum.

### ORDER

For the reasons stated in the accompanying Memorandum:

(1) Defendant's Motion to Dismiss plaintiffs' intentional infliction of emotional distress claim is GRANTED;

(2) Defendant's Motion to Strike the $20 million dollar ad damnum clauses from plaintiffs' amended complaint is GRANTED; and

(3) Defendant's Motion for Sanctions relating to the prosecution of the motions disposed of in paragraphs one and two is DENIED.