NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 12-2504

_____

MARY E. KASPER
Appellant

v.

COUNTY OF BUCKS; LAURA LOBIANCO;
MICHAEL CIANFICHI; BUCKS COUNTY COURT OF COMMON PLEAS

_____

On Appeal from the United States District Court for the
Eastern District of Pennsylvania
(District Court No. 2-11-cv-03544)
District Court Judge: Honorable Stewart Dalzell

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 14, 2013

Before:  HARDIMAN and GARTH, *Circuit Judges*, and STARK, *District Judge*[*]

(Filed: February 15, 2013)

_____

OPINION OF THE COURT

_____

GARTH, *Circuit Judge*.

_____

[*] The Honorable Leonard P. Stark, District Judge for the United States District Court for the District of Delaware, sitting by designation.

The appellant, Mary Kasper, appeals from the judgment of the District Court dismissing pursuant to Fed. R. Civ. P. 12(b)(6) her various claims concerning alleged harassment and discrimination at work and declining to afford her the opportunity to file a second amended complaint.

We have jurisdiction pursuant to 28 U.S.C. § 1291. For the reasons that follow, we will affirm the District Court's judgment.

I

We write principally for the benefit of the parties and recite only the facts essential to our disposition.[1] Kasper was employed as a supervisor in the Bucks County, Pennsylvania, Domestic Relations Division (Division) from February, 2008, until she announced her resignation in April, 2011. Kasper, who is white, has an adopted son who is black. In September, 2009, Kasper's coworker, defendant Michael Cianfichi, entered Kasper's office without permission, removed a photograph of her adopted son, scanned a copy of the photograph into a document the Division maintained listing the "top ten" most delinquent child support defendants, and showed this document to Kasper and another coworker. The following day, Kasper complained about the incident orally to a superior, defendant Laura LoBianco, and submitted a written complaint shortly thereafter. In the written letter, Kasper described her surprise and dismay at the incident.

---

[1] When considering an appeal from a dismissal of a complaint pursuant to Rule 12(b)(6), we accept as true all well pled factual allegations. Santiago v. GMAC Mortg. Group, Inc., 417 F.3d 384, 386 (3d Cir. 2005).

Kasper also alluded to her previous conversation with LoBianco, in which LoBianco seemingly had suggested that Kasper speak directly with Cianfichi:

> I took your advice and spoke with [Cianfichi] directly today regarding what occurred. I explained to him how his joke made me feel and he apologized. I informed him that my role as a parent is to defend my child, and I wanted to tell this to him directly as opposed to him hearing this only from you. I let him know that there are no hard feelings and that I'd like to continue the positive working relationship we have maintained thus far.

LoBianco took no action to discipline Cianfichi for the incident or to prevent future incidents. Following Kasper's complaint to LoBianco, Cianfichi and others began "an open and nonstop campaign of harassment and intimidation against [Kasper] in an effort to harm her and drive her from her job" through, inter alia, unmerited criticism of Kasper's work product and use of sick days. LoBianco was aware of this behavior and did not intervene to stop it.

Approximately one year after the incident with Cianfichi, LoBianco issued a disciplinary notice to Kasper regarding Kasper's improper use of sick days—specifically, her use of sick time to take her adopted son to doctor's appointments prior to her being eligible to take leave under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*, in connection with the son. The notice required that Kasper bring doctor's notes for further non-FMLA sick leave and warned that further violations could result in further discipline. Kasper was placed on "Step I" disciplinary status as a result of her violations of attendance policy.[2]

---

[2] "Step I" is the second tier of a five-level disciplinary scale: 1) Warning; 2) Step I; 3) Step II; 4) Step III/Final Warning/Suspension; 5) Termination.

A second disciplinary notice issued the same day placed Kasper on "Warning" status due to her unsatisfactory performance as a supervisor at the Division. The warning cited Kasper's lack of communication with co-managers and failure to take direction from these co-managers as well as poor performance on several specific projects or tasks. The warning also called on Kasper to make a "complete turn around" if she wished to remain at the Division.

In April, 2011, Kasper announced her resignation from the Division.

In June, 2011, Kasper brought the present action in the District Court for the Eastern District of Pennsylvania. Kasper raised three claims: an equal protection claim under 42 U.S.C. § 1983 against LoBianco alleging deliberate indifference to discrimination against Kasper and complicity in an ongoing pattern of racially based harassment; a claim under the FMLA against LoBianco and the County of Bucks, alleging retaliation for Kasper's use of FMLA leave; and a state-law tort claim against Cianfichi alleging intentional infliction of emotional distress.

In response to the complaint, defendants LoBianco and Cianfichi moved to dismiss all counts pursuant to Fed. R. Civ. P. 12(b)(6). They asserted that Kasper had failed to state a § 1983 claim because she neither articulated a "class of one" theory nor claimed deprivation of a constitutional right; that Kasper had failed to state an FMLA claim because she failed to allege an adverse employment action; and that Kasper had failed to state a claim for intentional infliction of emotional distress because she failed to allege extreme and outrageous conduct by Cianfichi.

4

Defendant County of Bucks filed a separate motion to dismiss asserting that Kasper, LoBianco, and Cianfichi were not employees of the County and that, in the alternative, Kasper had failed to make out a claim under the FMLA.

Kasper then filed an amended complaint. The District Court dismissed the above motions as moot and ordered the defendants to respond to the amended complaint. Kasper's amended complaint added the Bucks County Court of Common Pleas as a defendant, alleging that the Bucks County Court of Common Pleas, along with the County of Bucks, were joint employers of Kasper. The amended complaint did not bring any claims or request any relief specifically concerning the Bucks County Court of Common Pleas. The amended complaint also added a number of factual allegations concerning County of Bucks' status as an employer of the other parties, but Kasper did not amend the substantive allegations in the complaint. LoBianco, Cianfichi, and the County of Bucks then renewed their motions to dismiss. The Bucks County Court of Common Pleas likewise moved to dismiss the complaint on the grounds that Kasper had failed to state a claim against the court, that the court was immune from suit under the 11th Amendment, and that the court was not a "person" for purposes of § 1983.

The District Court, on April 27, 2012, dismissed each of Kasper's claims with prejudice for failure to state a claim. The court reasoned that Kasper's § 1983 claim failed because she did not allege that she was treated differently from similarly situated people with respect to the alleged "campaign of harassment" and because she had failed to allege that LoBianco's acquiescence led to Cianfichi's initial discriminatory action. In dismissing this claim, the District Court declined to extend Kasper an opportunity to

5

submit a second amended complaint on the ground that Kasper had previously been placed on notice of these deficiencies and had failed to cure them. The Court dismissed Kasper's FMLA claim against LoBianco and the County on the ground that the Step 1 disciplinary warning imposed in relation to Kasper's use of sick days was not a sufficiently severe sanction to qualify as an adverse employment decision. Finally, the Court concluded with respect to Kasper's intentional infliction of emotional distress claim that Cianfichi's alleged conduct was not sufficiently outrageous and extreme to give rise to a cause of action under Pennsylvania law. This timely appeal followed.

II

We exercise plenary review over the District Court's dismissal of each of Kasper's claims pursuant to Fed. R. Civ. P. 12(b)(6). McMullen v. Maple Shade Twp., 643 F.3d 96, 98 (3d Cir. 2011). Dismissal is appropriate only if, accepting all of Kasper's factual allegations as true and construing the complaint in the light most favorable to her, Kasper is nonetheless not entitled to relief under any plausible reading of the complaint. Id.

We turn first to the District Court's dismissal of Kasper's § 1983 claim. Kasper has alleged that LoBianco was deliberately indifferent to Cianfichi's discrimination, that she consciously failed to protect Kasper from Cianfichi's conduct, and that she knowingly engaged in and encouraged an ongoing pattern of racially based harassment.

In order to establish a § 1983 equal protection claim on this basis, Kasper must demonstrate that she received different treatment than other similarly situated persons

6

and that the disparate treatment was based on her protected class status.[3] See Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990). The great bulk of Kasper's § 1983 assertions are plainly defective in that they fail to allege disparate treatment relative to other similarly situated people and are not pled with adequate specificity. Kasper's amended complaint simply gives no indication that the various criticisms of her performance as alleged in the complaint were brought against Kasper in a manner distinct from others similarly situated. Moreover, the complaint contains no specific allegations concerning the particulars of the alleged "campaign" of harassment or of LoBianco's knowledge of the alleged harassing events, nor does it offer anything beyond a conclusory assertion linking these criticisms to racial discrimination based on Kasper's adoption of a black child. These claims thus fail for want of adequate pleading. See Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009) ("A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the complaint's

---

[3] Although generally an equal protection claim may be made out even absent membership in a protected group based on disparate treatment of a "class of one"; Vill. of Willowbrook v. Olech, 528 U.S. 562, 565, 120 S. Ct. 1073, 1075, 145 L. Ed. 2d 1060 (2000); the Supreme Court has qualified that "the class-of-one theory of equal protection has no application in the public employment context." Engquist v. Oregon Dept. of Agr., 553 U.S. 591, 607, 128 S. Ct. 2146, 2156, 170 L. Ed. 2d 975 (2008). Kasper claims that her status as the adoptive mother of a black child affords her protected class status. Although there is support for the proposition that association with her black adopted son provides a basis for asserting protected class status; see, e.g., Holcomb v. Iona Coll., 521 F.3d 130, 139 (2d Cir. 2008) (interracial marriage); RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1055 (9th Cir. 2002) (association with black club patrons); we need not resolve this issue: even assuming, *arguendo*, that Kasper can properly claim protected class status, her claim fails on other grounds, as discussed below.

framework, they must be supported by factual allegations."). See also Argueta v. U.S. Immigration & Customs Enforcement, 643 F.3d 60, 74 (3d Cir. 2011) ("broad allegations regarding the existence of a 'culture of lawlessness' are accorded little if any weight in our analysis.").

Kasper's complaint describes a single incident with adequate factual specificity: Cianfichi's misuse of the photograph of Kasper's adopted black son and LoBianco's subsequent failure to discipline Cianfichi.[4] Because Kasper has brought this claim against LoBianco but has not specifically alleged any acts of direct discrimination by LoBianco herself in this connection, Kasper must further demonstrate that LoBianco's affirmative conduct, by order or acquiescence, led to discrimination by Cianfichi, her subordinate. Andrews, 895 F.2d at 1478 ("The existence of an order or acquiescence leading to discrimination must be pled and proven with appropriate specificity.").

As the District Court properly concluded, Kasper's acquiescence claim necessarily fails because she has not alleged any action or acquiescence on LoBianco's part *prior* to Cianfichi's prank. There is thus nothing in the complaint supporting a conclusion that LoBianco engaged in "acquiescence *leading to* discrimination." Id. (emphasis added). See also Argueta, 643 F.3d at 74 (3d Cir. 2011) ("Broadly speaking . . . the typical

---

[4] Although Kasper does not directly assert that she was treated differently from others similarly situated in this respect, she does specifically describe the alleged racial motivations behind Cianfichi's action, and given the nature of the prank it is fair to infer from the complaint that similarly situated coworkers were not subject to the same sort of action by Cianfichi. See Wisniewski v. Johns-Manville Corp., 759 F.2d 271, 273 (3d Cir. 1985) (on 12(b)(6) motion plaintiff entitled to benefit of all reasonable inferences that can be fairly be drawn from complaint).

8

'notice' case seems to involve a prior incident or incidents of misconduct by a specific employee or group of employees, specific notice of such misconduct to their superiors, and then continued instances of misconduct by the same employee or employees.").

III

In dismissing Kasper's § 1983 claim, the District Court declined to offer her the opportunity to file a second amended complaint. Although affording a plaintiff leave to amend is ordinarily a discretionary matter for the District Court subject to review for abuse of that discretion; Krantz v. Prudential Investments Fund Mgmt. LLC, 305 F.3d 140, 144 (3d Cir. 2002); we have held that "in civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007). See also Darr v. Wolfe, 767 F.2d 79, 81 (3d Cir. 1985), abrogated on other grounds by Alston v. Parker, 363 F.3d 229, 233 (3d Cir. 2004) ("this court has consistently held that when an individual has filed a complaint under § 1983 which is dismissable for lack of factual specificity, he should be given a reasonable opportunity to cure the defect, if he can, by amendment of the complaint and that denial of an application for leave to amend under these circumstances is an abuse of discretion.").

In the present case, Kasper was placed on notice of the defects in her pleadings when the defendants moved to dismiss her initial complaint. She then filed an amended complaint that made no effort to cure these deficiencies. Kasper has thus already been afforded the opportunity to amend that we require in civil rights cases. The District Court

9

in weighing the equities of this case therefore did not abuse its discretion by declining to *sua sponte* offer Kasper an additional opportunity to amend her complaint.

IV

We turn next to the District Court's dismissal of Kasper's FMLA claim. Pursuant to 29 U.S.C. § 2617, an employee may bring a private cause of action against an employer alleging a violation of the FMLA. In order to establish a claim of discrimination under the FMLA, a plaintiff must show that, having exercised rights protected under the FMLA, "he suffered an adverse employment decision, and . . . the adverse decision was causally related to his leave." Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 146 (3d Cir. 2004); see Erdman v. Nationwide Ins. Co., 582 F.3d 500, 509 (3d Cir. 2009). To demonstrate the existence of an adverse employment decision, the Supreme Court has held, in the Title VII context, that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse," such that the action well might have dissuaded a reasonable worker from taking a protected action. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (citations and internal quotation marks omitted).

Assuming, *arguendo*, that the Burlington Northern standard applies in the FMLA context[5] and accepting Kasper's conclusory gestures indicating that she took FMLA

---

[5] Prior to Burlington Northern, this Court's jurisprudence employed a somewhat more restrictive definition of "adverse employment action" which required an action that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997) (internal quotation marks omitted). Because Kasper's claim cannot succeed under even

10

leave and that her "Step 1" disciplinary warning was the result of taking this leave,[6] the District Court properly determined that the disciplinary measure was not of such severity that it might dissuade a reasonable worker from taking FMLA leave. The Step 1 action did no more than require Kasper to provide doctor's notes in relation to future non-FMLA absences. This requirement was far from onerous and as such is best classified among the "minor annoyances" of office life that do not rise to the level of adverse employment actions. Burlington N. & Santa Fe Ry. Co., 548 U.S. at 68. Although the Step 1 action raised the prospect of future discipline, the District Court properly determined that it was not itself a materially adverse sanction.[7]

V

We consider, finally, the District Court's dismissal of Kasper's state law claim against Cianfichi for intentional infliction of emotional distress. In Pennsylvania, "[l]iability on an intentional infliction of emotional distress claim 'has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go

the Supreme Court's somewhat broader definition of "adverse employment action," we need not conclusively determine whether this definition necessarily applies to FMLA as well as Title VII cases.

[6] There is nothing in the complaint to indicate that the second warning regarding Kasper's work performance had any relationship to her FMLA leave.

[7] Kasper objects to the fact that the District Court, in reaching this conclusion, referred to the fact that the disciplinary notice did not alter the compensation, terms, conditions, or privileges of her employment. She asserts that this reference is in tension with the Burlington Northern analysis, which does not use this language. See footnote 5 of this opinion. It is clear from the District Court's opinion, however, that the Court applied the Burlington Northern analysis and referred to the fact that there was no change in the compensation, terms, conditions, or privileges of her employment only to reinforce its determination that Kasper had not suffered a materially adverse employment action under the Burlington Northern standard.

11

beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Reedy v. Evanson, 615 F.3d 197, 231-32 (3d Cir. 2010) (quoting Field v. Phila. Elec. Co., 388 Pa. Super. 400, 565 A.2d 1170, 1184 (1989)). As the Pennsylvania Supreme Court has further elaborated:

> Cases which have found a sufficient basis for a cause of action of intentional infliction of emotional distress have had presented only the most egregious conduct. *See e.g., Papieves v. Lawrence,* 437 Pa. 373, 263 A.2d 118 (1970)(defendant, after striking and killing plaintiff's son with automobile, and after failing to notify authorities or seek medical assistance, buried body in a field where discovered two months later and returned to parents (recognizing but not adopting section 46)); *Banyas v. Lower Bucks Hospital,* 293 Pa.Super. 122, 437 A.2d 1236 (1981)(defendants intentionally fabricated records to suggest that plaintiff had killed a third party which led to plaintiff being indicted for homicide); *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265 (3d. Cir. 1979)(defendant's team physician released to press information that plaintiff was suffering from fatal disease, when physician knew such information was false).

Hoy v. Angelone, 554 Pa. 134, 151-52, 720 A.2d 745, 754 (1998).

In the present case, Kasper has made vague assertions of an ongoing campaign of harassment by Cianfichi and others, but the only incident she has alleged with any factual specificity is Cianfichi's prank involving Kasper's adopted son. Kasper has pointed to no case in which a court has found a similar prank to rise to the level of being considered "utterly intolerable in a civilized community," and the behavior she complains of comes nowhere near the level of conduct that Pennsylvania courts have recognized as so qualifying. Moreover, Kasper's own letter written to LoBianco following the event indicates that Cianfichi apologized for the incident and that Kasper described an otherwise functioning working relationship between the two of them. The District Court therefore properly dismissed Kasper's claim on this count.

The decision of the District Court will be affirmed.[8]

---

[8] The District Court did not reach the defendants' additional grounds for dismissal, including the County of Bucks' claim that it was not in fact Kasper's employer for FMLA purposes and the Bucks County Court of Common Pleas' claims that it is not covered by § 1983 and that it is immune with respect to Kasper's § 1983 and FMLA claims. Because we hold that the District Court properly dismissed Kasper's amended complaint on the above grounds, we likewise will not address these additional claims.