**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CURCUIT
_____

No. 16-2962
_____

KIMBERLY WELLS,
              Appellant

v.

RETINOVITREOUS ASSOCIATES, LTD.
d/b/a MID ATLANTIC RETINA

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2-15-cv-05675)
District Judge:  Honorable Juan R. Sánchez
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
February 7, 2017

Before: MCKEE, COWEN, and FUENTES, *Circuit Judges.*

(Opinion Filed: August 1, 2017)
_____

OPINION*
_____

FUENTES, *Circuit Judge*.

        This is an employment retaliation suit. Plaintiff Kimberly Wells previously

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

brought suit against her former employer Retinovitreous Associates, Ltd., alleging disability discrimination based on her diagnosis with multiple sclerosis. Now, Wells alleges she was disciplined, suspended, and terminated in retaliation for that lawsuit.

For the reasons that follow, we will affirm the District Court's order granting summary judgement in favor of Wells' employer.

**I.**

Wells worked as an Ophthalmic Technician for Retinovitreous Associates, Ltd. ("RA") at its Wills Eye Hospital office in Philadelphia, Pennsylvania from August 2011, until her termination in July 2015. Wells' job responsibilities included performing, explaining, and documenting certain medical procedures and obtaining and documenting patient medical histories and current symptoms. This position was governed by an employee handbook, outlining RA's policies. Violations of these policies, including failure to follow a supervisor's directions, were subject to corrective disciplinary action.[1]

In the course of her first three years of employment, Wells received two such disciplinary warnings. In March 2012, Wells received a "verbal written warning" for failing to document a patient's injection and failing to return a perishable drug to refrigerated storage.[2] In January 2013, Wells received a second such warning for "unsatisfactory work performance/insubordination" for failing to complete chart documentation per her manager's instructions but telling her manager that the documentation was completed.

---

[1] RA's corrective disciplinary actions included verbal counseling, written warnings, suspension with or without pay, demotion, transfer, or termination of employment.
[2] The warning notes the employee's disagreement with the basis of the infraction.

During that time period, Wells also received an overall score of "meets expectations" on her 2013 annual employee evaluations; she received a score in the "need improvement" range in her 2014 evaluation, including in the teamwork, communication skills, and essential abilities categories.

In January 2013, Wells was diagnosed with multiple sclerosis. Shortly thereafter, Wells notified RA of her diagnosis and requested leave under the Family Medical Leave Act, which she took intermittently until October 2014. In February 2015, Wells sued RA, bringing failure to accommodate, hostile work environment, and retaliation claims related to her FMLA leave requests.[3]

Wells received multiple disciplinary infractions following the suit, culminating in her termination. A month after bringing this suit, Wells received a "verbal written warning" for failing to follow proper inventory management procedures when preparing medication for a patient's injection. Later that month, Wells received a written warning for failing to document three injections and discharging a patient without consulting her supervisor. Shortly thereafter, in April, Wells received a three-day suspension after preparing a patient's incorrect eye for an injection. Wells received a written warning in May for failing to follow proper procedure in signing out a drug and verifying a patient's insurance information.[4] Finally, in July 2015, Wells was fired for failing to follow

---

[3] The District Judge presided over Wells' original suit. The parties agreed to dismiss the action with prejudice in September 2015. *See Wells v. Retinovitreous Assocs. Ltd.*, No. 15-478 (E.D. Pa. Sept. 18, 2015).

[4] The warning noted that Wells stated that the issue was "Billing[']s problem" and indicates that "Kim needs to take ownership and responsibility for her own mistakes." JA 290.

pharmaceutical inventory management procedures and neglecting to appropriately document an injection for billing purposes.

Wells then filed the suit before us. She alleged that RA retaliated against her for her initial lawsuit, in violation of the Americans with Disabilities Act (ADA),[5] the Family and Medical Leave Act (FMLA),[6] and the Pennsylvania Human Relations Act (PHRA).[7]

RA moved for summary judgment, which the District Court granted.[8] The District Court found that Wells could not establish a prima facie case of retaliation, because she could not show a causal link between the filing of her original suit and subsequent adverse employment actions. The District Court further held that even if she had done so, she had failed to show that RA's reasons for the adverse employment actions were pretextual.

This appeal followed. Wells argues the District Court erred in granting summary judgment because (1) the District Court applied the improper standard in determining if a pattern of discipline following a protected activity rises to the level of a materially adverse employment action, and (2) the District Court improperly concluded that Wells had not proven causation.[9]

---

[5] 42 U.S.C. §§ 12101-12213.
[6] 29 U.S.C. §§ 2601-2654.
[7] 43 Pa. Cons. Stat. §§ 951-963.
[8] *See Wells v. Retinovitreous Assocs.*, No. 15-5675, 2016 WL 3405457 (Jun. 21, 2016 E.D. Pa.).
[9] Wells' Br. at 2. Wells does not press the pretext issue on appeal, but instead addresses the issue as part of her argument that she has proven causation. Nevertheless, we will construe this argument as challenging the District Court's determination that she had not shown pretext as well.

**II.**[10]

Claims of retaliation under the ADA, FMLA, and PHRA are analyzed under the *McDonnell Douglas* burden-shifting framework.[11] Under this framework, the analysis proceeds in three stages: (1) the plaintiff must establish a prima facie case of retaliation; (2) if the plaintiff establishes a prima facie case, the defendant must articulate a legitimate, nondiscriminatory reason for its adverse action against the plaintiff; (3) if the defendant does so, the burden then returns to the plaintiff to prove by a preponderance of the evidence that the defendant's proffered reason is a pretext for retaliation.[12] "Our experience is that most cases turn on the third stage, i.e., can the plaintiff establish pretext."[13]

So, too, does the case here. Even assuming Wells could make out a prima facie

---

[10] We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment and apply the same standard that the District Court applies. *See Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005). A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In evaluating the evidence, a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Shuman*, 422 F.3d at 146 (internal quotations and citations omitted).
[11] *See Williams v. Phila. Hous. Auth. Police Dep't.*, 380 F.3d 751, 759 (3d Cir. 2004) (applying *McDonnell Douglas* framework to ADA retaliation claim); *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 256 (3d Cir. 2014) (applying framework to FMLA retaliation claims); *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (applying framework to PHRA retaliation claims).
[12] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-803 (1973); *Williams*, 380 F.3d at 759 n.3. While the burden of production may shift, the burden of persuasion remains at all times with the plaintiff. *Id.*
[13] *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999).

5

case,[14] she has failed to show that RA's proffered reasons for the adverse employment actions are pretextual. To establish pretext, the plaintiff must "either (i) discredit[] the proffered reasons, either circumstantially or directly, or (ii) adduc[e] evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action."[15] The employee "must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason."[16]

Wells argues that it is not believable that, after "not [being] disciplined for approximately two . . . years, and . . . [after being] issued positive performance reviews,"

---

[14] To establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) she engaged in a protected activity, (2) she subsequently or contemporaneously suffered an adverse employment action, and (3) there is a causal link between the protected activity and the adverse action. *See EEOC v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d Cir. 2015) (applying the ADA standard); *Budhun*, 765 F.3d at 256 (applying the FMLA standard); *Daniels*, 776 F.3d at 193 (applying the PHRA standard). The parties do not dispute that Wells engaged in protected activity when she filed her prior lawsuit against RA or that Wells was subject to adverse employment actions.

Wells correctly argues that the District Court applied the wrong standard in identifying the adverse employment actions she suffered. The District Court should have applied the less restrictive *Burlington Northern* standard, under which "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal citations and quotations omitted).

The application of the incorrect standard does not lead us to reverse the District Court's order, however, because applying the correct standard, Wells' claims still cannot survive summary judgment, since Wells has failed to show that RA's proferred reasons for its disciplinary actions were pretextual. For the same reason, we need not address Wells' arguments regarding causation.

[15] *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

[16] *Keller v. Orix Credit All., Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997) (en banc).

she "suddenly became inept at her job such that she was issued discipline on an almost monthly basis following her protected activity."[17]

However, as the District Court correctly notes, Wells "does not dispute the underlying conduct giving rise to [RA]'s warnings and adverse employment actions."[18] In reviewing the record, we conclude that the District Court properly found that Wells had not shown it was more likely than not that discrimination, rather than this conduct, caused the adverse employment actions here.

The conduct leading to the disciplinary actions included repeated failure to document patient medication and follow proper billing and inventory procedures, repeated failures to follow the instructions of her supervisors, and preparing a patient's incorrect eye for a procedure.[19] Wells was on notice of the potential for dismissal for any of the cited infractions pursuant to RA's established disciplinary procedures,[20] and RA followed its disciplinary procedure in issuing warnings and suggesting corrective measures. Furthermore, prior to Wells' filing of her initial suit, Wells' 2013 and 2014 performance reviews indicated a need to improve in several key areas, including monitoring patients, communication skills, and teamwork[21] and Wells was subject to two disciplinary actions. Furthermore, Wells offers no evidence that similar violations of her employer's policies did not result in discipline prior to the filing of her suit, and Wells

---

[17] Wells' Br. at 27.
[18] JA 9.
[19] Wells acknowledged that administering this procedure to a patient's incorrect eye could potentially cause health risks. JA 109.
[20] JA 61.
[21] JA 264-73.

offers no comparator evidence from which we can conclude that other employees who did not sue RA were treated more favorably for similar disciplinary violations. And the billing infractions, which resulted in Wells' final written warning and her ultimate termination,[22] were discovered after a routine review of all employee billing work by a billing agent, not a targeted search by a supervisor.[23]

Thus, no reasonable juror could infer that RA's non-discriminatory reasons for Wells' disciplinary warnings, suspension, and termination were a pretext based on this evidence.

**IV.**

For the foregoing reasons, we will affirm the District Court's Order granting summary judgment to RA.

---

[22] JA 290, 297.
[23] JA 99.