IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brenda D. Goodall,                          :
                          Appellant         :
                                            :
          v.                                : No. 153 C.D. 2024
                                            : Submitted: April 8, 2025
Pennsylvania Department                     :
of Corrections                              :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE STACY WALLACE, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge


OPINION
BY JUDGE WALLACE                            FILED:  May 23, 2025


          Brenda D. Goodall (Goodall) appeals the order dated February 2, 2024, of the

Court of Common Pleas of Mercer County (Common Pleas), that granted summary

judgment in favor of the Pennsylvania Department of Corrections (Department) with

respect to Goodall's claims of hostile work environment and constructive discharge

disability discrimination under the Pennsylvania Human Relations Act (PHRA)[1] and

retaliation under the Family and Medical Leave Act of 1993 (FMLA).[2]  After careful

review, we affirm.

---

[1] Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§ 951-63.

[2] 29 U.S.C. §§ 2601-54.

## BACKGROUND

Goodall filed a complaint against the Department on March 4, 2022.[3] Goodall alleged she worked for the Department at the State Correctional Institution at Mercer beginning in approximately 1993. In October 2019, Goodall applied for intermittent leave under the FMLA because of debilitating migraine headaches. Goodall alleged her migraines, when active, caused "photophobia, phonophobia, nausea, dry heaves, dizziness, and loss of vision acuity."[4] Reproduced Record (R.R.) at 8. The symptoms of Goodall's migraines prevented her from driving. Goodall alleged the Department granted her application for intermittent FMLA leave.

In April 2020, Goodall's migraine condition became severe. Goodall went on FMLA leave followed by leave without pay from April 15, 2020, until May 29, 2020. Goodall alleged her supervisor, Lisa Graves (Graves), called and sent text messages "numerous times to pressure [her] to end her leave and return to work," though other employees could have performed Goodall's duties in her absence.[5] R.R. at 9.

Graves spoke to Goodall when she returned to work on June 1, 2020. Graves explained Goodall exhausted her FMLA leave, would not be able to take additional leave without preapproval, and could be terminated for taking any unapproved leave. Goodall alleged she was unable to comply with the preapproval requirement because

---

[3] Goodall previously pursued a charge of discrimination with the Equal Employment Opportunity Commission and Pennsylvania Human Relations Commission in August 2020.

[4] Photophobia is "abnormal visual intolerance of light." Dorland's Illustrated Medical Dictionary 1419 (33rd ed. 2020). Phonophobia is "irrational fear of sounds or of speaking aloud." *Id.* at 1414.

[5] Although not alleged in the complaint, Goodall sent a text message to Graves before going on leave requesting that Graves not encourage her to "drive into work under [her] FMLA restrictions." R.R. at 358.

her migraines were unpredictable. Thus, Goodall alleged "she had no choice but to retire on June 9, 2020."[6] R.R. at 10-11.

Ultimately, Goodall alleged the Department discriminated against her based on her disability in violation of the PHRA by creating and permitting a hostile work environment that culminated in her constructive discharge. Goodall also alleged the Department retaliated against her for taking FMLA leave. The Department filed an answer and new matter, to which Goodall filed a reply.

The Department filed a motion for summary judgment on September 5, 2023. In its accompanying brief, the Department argued Goodall had been placed on leave restrictions during the two years before her FMLA leave because of problems with her leave usage, and Graves' statement to Goodall upon her return that she could not use further leave without preapproval was a reaffirmation of preexisting Department policy. The Department argued Goodall never informed Graves or human resources officer Lori Mahlmeister (HR Officer), whom Goodall also spoke to around the time of her retirement, that she would be unable to comply with the policy.

Goodall filed an opposition to the Department's motion on October 31, 2023. In relevant part, Goodall disputed that Graves' limitation on her use of further leave was preexisting Department policy. Goodall contended she did not need preapproval in the past except under a formal leave restriction. Moreover, Goodall argued Graves imposed the limitation despite having every reason to know she would be unable to comply because her migraines were unpredictable. Goodall contended she informed the HR Officer of her inability to comply with the limitation, but the HR Officer took no action in response.

---

[6] Goodall took three unapproved days off before retiring, from June 2, 2020 through June 4, 2020. R.R. at 121-24.

3

Common Pleas granted summary judgment by order dated February 2, 2024, concluding the Department reasonably accommodated Goodall's migraine condition and took no adverse employment actions against her. Graves made minimal contact with Goodall during her leave, Common Pleas reasoned, and did not instruct Goodall to return to work. Further, Graves' directive to Goodall that she receive preapproval before taking additional leave was a mere statement of Department policy. Common Pleas observed Goodall took additional unapproved leave in violation of this policy shortly before retiring and yet was not reprimanded or terminated.

Goodall timely filed a notice of appeal. Before this Court, Goodall contends Common Pleas misapplied the law, considered matters that were not in dispute, and failed to view the evidence in the light most favorable to her as the nonmoving party. Goodall essentially repeats her allegation that Graves pressured her into returning to work during FMLA leave and imposed a preapproval requirement that she could not comply with. Goodall alleges she spoke to the HR Officer and explained she could not comply with the requirement, but the HR Officer did not meaningfully assist her.

## DISCUSSION

This Court will reverse the grant of summary judgment where there has been an error of law or abuse of discretion. *Brown-Boyd v. Se. Pa. Transp. Auth.*, 320 A.3d 872, 875 (Pa. Cmwlth. 2024). Summary judgment should only be granted if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Id.* The Court has recognized that "[w]hether genuine issues of material fact exist is a question of law, 'and therefore, on that question our standard of review is *de novo.* This means we need not defer to the determinations made by the lower tribunals.'" *Id.* (quoting *Weaver v. Lancaster Newspapers, Inc.*, 926 A.2d 899, 902-03 (Pa. 2007)). We must review the record "in the light most

4

favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Howarth v. Falls Twp.*, 310 A.3d 336, 343 (Pa. Cmwlth. 2024) (quoting *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 195 (Pa. 2007)).

**A. Hostile work environment and constructive discharge**

Generally, Section 5(a) of the PHRA prohibits discrimination by an employer on the basis of "non-job related handicap or disability." 43 P.S. § 955(a). To prove a hostile work environment under the PHRA, a plaintiff must establish he or she "1) suffered intentional discrimination because of [membership in a protected class]; 2) the harassment was severe or pervasive and regular; 3) the harassment detrimentally affected [the plaintiff]; 4) the harassment would detrimentally affect a reasonable person of the same protected class; and 5) the harasser was a supervisory employee or agent." *Infinity Broad. Corp. v. Pa. Hum. Rels. Comm'n*, 893 A.2d 151, 158 (Pa. Cmwlth. 2006). All five of these factors must be met, and if one is not met, the claim fails. *See id.* at 160. We focus our analysis on the requirement that a plaintiff must have suffered severe or pervasive harassment. This Court has explained:

> In determining whether a working environment is sufficiently hostile or abusive, courts must look to the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The conduct must constitute an objective change in the terms and conditions of employment. Thus, simple teasing, offhand comments, and isolated incidents (unless extremely serious) are not actionable under the PHRA.

*Id.* (citations and quotation marks omitted). Additionally, "[c]onstructive discharge occurs only when an employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign."

5

*Raya & Haig Hair Salon v. Pa. Hum. Rels. Comm'n*, 915 A.2d 728, 733 (Pa. Cmwlth. 2007) (quoting *Grande v. State Farm Mut. Auto. Ins. Co.*, 83 F. Supp. 2d 559, 564 (E.D. Pa. 2000)).

Our review of Goodall's deposition reveals the following. Goodall agreed she took FMLA leave beginning April 15, 2020, with no specific ending date. R.R. at 109. Graves "just accepted it" when Goodall told her she would be out on leave. *Id.* The day before Goodall went on leave, she sent a text message to Graves explaining she could not drive under doctor's orders while experiencing migraine symptoms and was taking prescription medication that caused drowsiness. Goodall continued: "Do not ever call me again suggesting I drive into work under my FMLA restrictions. Perhaps a legal professional may better explain this to you. I will not be harassed and pressured due to a medical condition beyond my control." *Id.* at 358.

Goodall did not return to work until June 1, 2020, more than six weeks later. R.R. at 118. Goodall testified Graves called her "two or three" times and sent "one or two text messages" during her FMLA leave. *Id.* at 110-11. In substance, Graves called Goodall and explained "it would be really nice if [she] could come in" because the prison needed to release "a lot of inmates," and the department in which Goodall worked was understaffed. *Id.* Although Graves did not instruct Goodall to return to work, Goodall described her tone as "[s]notty." *Id.* at 111. Graves asked in her text messages whether Goodall would be in the next day. *Id.* at 113.

Graves was "condescending" and "irate" with Goodall when she returned to work on June 1, 2020. R.R. at 118. Graves discussed pending assignments and told Goodall she was out of FMLA leave and would need preapproval for all future leave requests. *Id.* at 116-18. Goodall had exhausted her sick leave but had about 20 days of annual leave remaining. *Id.* Goodall testified the person filling in for her during

6

her leave could have performed her duties. *Id.* at 112, 130. Further, Goodall testified it was unnecessary to obtain preapproval except under a formal leave restriction, and she was not aware of other employees having to obtain preapproval. *Id.* at 102, 125-26.

Goodall did not explain to Graves that her migraines were unpredictable and would make it impossible to comply with the preapproval requirement. R.R. at 117-18. In fact, she never spoke to Graves again after June 1, 2020. *Id.* at 124. Goodall insisted "there was no talking to [Graves]. . . . she wasn't approachable at that time." *Id.* at 118-19. Goodall testified she spoke to the HR Officer and explained that it would be impossible to comply with the preapproval requirement. *Id.* at 119. The HR Officer stated she was unaware of the preapproval requirement and took no action to assist Goodall. *Id.* at 120.

For the next three days, from June 2, 2020 through June 4, 2020, Goodall was unable to work because of migraines and took leave without obtaining preapproval. R.R. at 121-24. Goodall testified she returned to work on Friday, June 5, 2020, and then decided to retire over the weekend. *Id.* at 121. Goodall retired on June 8, 2020. *Id.* Goodall spoke to the HR Officer, explaining it would be impossible to comply with the preapproval requirement, but the HR Officer merely asked her when she would like to retire. *Id.* at 121-22. Goodall maintained she was fearful of disciplinary action and "felt forced to retire." *Id.*

Even viewing this evidence in the light most favorable to Goodall, we cannot describe Graves' actions during Goodall's FMLA leave as inappropriate, let alone a form of harassment. Goodall asked that Graves not encourage her to drive contrary to doctor's orders while experiencing migraine symptoms but did not ask that Graves never contact her under any circumstances. Additionally, Graves only called or sent

7

text messages to Goodall three to five times during her leave, which lasted more than six weeks. Occasional inquiries regarding Goodall's ability to return to work were reasonable, particularly given that her leave had no specific ending date.

Graves' actions when Goodall returned from her FMLA leave were arguably more problematic. Graves was irate with Goodall, discussed pending assignments that could have been completed by someone else in Goodall's absence, and imposed a preapproval requirement that she knew, or should have known, Goodall could not comply with based on her experience with Goodall's condition. Critically, however, Goodall took leave without preapproval for three days in a row after Graves imposed the preapproval requirement, and our review of the record has revealed no evidence Graves or anyone else took or intended to take disciplinary action against her.

Whether considered alone or in conjunction with other acts and omissions, we conclude Graves' irritation and decision to impose a preapproval requirement that the Department never enforced does not demonstrate the sort of severe or pervasive harassment necessary to establish a hostile work environment. At worst, Goodall's testimony reflects that she was subjected to an isolated incident of spiteful behavior by Graves, which was not "extremely serious." *See Infinity Broad. Corp.*, 893 A.2d at 158. We conclude for the same reasons that Goodall's circumstances were not so intolerable that they resulted in her constructive discharge. Because Goodall did not establish she suffered severe or pervasive harassment, the PHRA claim fails, and we need not analyze the remaining elements of the cause of action.

**B. FMLA retaliation**

The United States Court of Appeals for the Third Circuit (Third Circuit) has stated the elements of an FMLA retaliation claim based on circumstantial evidence as follows:

8

> [I]t is [the plaintiff's] burden to establish that (1) she invoked her right
> to FMLA-qualifying leave, (2) she suffered an adverse employment
> decision, and (3) the adverse action was causally related to her
> invocation of rights. Once she establishes a prima facie case, the
> burden shifts to the defendant to provide evidence of a legitimate non-
> discriminatory reason for the adverse action. If the [defendant] meets
> this minimal burden, the [plaintiff] must then point to some evidence
> that the defendant's reasons for the adverse action are pretextual.

*Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 256 (3d Cir. 2014) (citations and quotation marks omitted). In this case, an adverse employment decision is one "that a reasonable employee would have found to be materially adverse, 'such that the action well might have dissuaded a reasonable worker from taking a protected action.'"[7] *Vasil v. Dep't of Mil. & Veterans Affs.*, 230 A.3d 529, 538 (Pa. Cmwlth. 2020) (quoting *Greineder v. Masonic Homes of the R.W. Grande Lodge* (E.D. Pa., No. 13-2376, filed Apr. 23, 2024), slip op. at 9).

The Third Circuit's reasoning in *Kasper v. County of Bucks*, 514 F. App'x 210 (3d Cir. 2013), is persuasive. In relevant part, Kasper received a disciplinary notice requiring her to obtain doctor's notes for future non-FMLA sick leave and placing her on "'Step I' disciplinary status." *Id.* at 213. Kasper resigned and filed an action alleging the disciplinary notice was in retaliation for using FMLA leave. *Id.* at 213, 216. Kasper cited a coworker's offensive "prank" involving a photograph of her

---

[7] Case law reveals uncertainty regarding the definition of an "adverse employment decision" in the FMLA context. *See Budhun*, 765 F.3d at 257 (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997)) (explaining the Third Circuit has not yet decided whether to apply the "more relaxed" materially adverse standard applicable to Title VII actions to FMLA retaliation claims or the preexisting standard that defined an adverse employment decision as one that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee"); *Wells v. Retinovitreous Assocs., Ltd.*, 702 F. App'x 33, 36 n.14 (3d Cir. 2017) (applying the materially adverse standard to an FMLA retaliation claim in a nonprecedential decision). Because Goodall's claim would fail under either standard, we will assume for the sake of argument that the materially adverse standard applies. *See Kasper v. Cnty. of Bucks*, 514 F. App'x 210, 216 n.5 (3d Cir. 2013).

adopted African American son for which the coworker did not receive discipline. *Id.* at 212, 215. According to Kasper, she had been subject to harassment ever since complaining to her superior about the incident. *Id.* at 212.

The Third Circuit concluded Kasper had not suffered an adverse employment decision. It explained the requirement in the disciplinary notice that Kasper obtain doctor's notes for non-FMLA sick leave "was far from onerous and as such is best classified among the 'minor annoyances' of office life that do not rise to the level of adverse employment actions." *Kasper*, 514 F. App'x at 216-17 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Therefore, although the disciplinary notice "raised the prospect of future discipline," it was not so severe that it would dissuade a reasonable worker from the protected action of taking FMLA leave again in the future. *Id.*

Likewise, we conclude the circumstances of this matter "raised the prospect of future discipline" for Goodall but cannot be described as materially adverse. *See Kasper*, 514 F. App'x at 217. We must reiterate that Goodall violated the preapproval requirement immediately after Graves imposed it by taking three days of unapproved leave in a row. However, our review of the record has revealed no evidence Graves or anyone else took or intended to take disciplinary action against Goodall. A reasonable worker would not feel dissuaded from taking FMLA leave because of a requirement that he or she obtain preapproval for any future leave requests, particularly when the employer has not enforced the requirement after repeated violations.

## CONCLUSION

The record supports Common Pleas' decision that there are no genuine issues of material fact. Even accepting Goodall's account, she did not suffer the severe or

10

pervasive harassment necessary to establish a hostile work environment claim, nor were her employment conditions so intolerable that they could establish constructive discharge. Additionally, Goodall did not suffer an adverse employment decision and was not retaliated against as a result of taking FMLA leave. Because we discern no error of law or abuse of discretion by Common Pleas, and the Department is entitled to judgment as a matter of law, we affirm the February 2, 2024 order.

_____
STACY WALLACE, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brenda D. Goodall,               :

                 Appellant     :

                                  :

           v.                    : No. 153 C.D. 2024

                                  :

Pennsylvania Department     :

of Corrections                    :

# **O R D E R**

    **AND NOW**, this 23rd day of May 2025, the order dated February 2, 2024, by the Court of Common Pleas of Mercer County, is **AFFIRMED**.

_____

STACY WALLACE, Judge