**Melvin KAHLE, Administrator of the Estate of Adelia Curry, Plaintiff,**

v.

**GLOSSER BROTHERS, INC., Defendant.**

**Civ. A. No. 67–821.**

United States District Court,
W. D. Pennsylvania.

June 1, 1971.

James A. Ashton, Pittsburgh, Pa., for plaintiff.

William Tighe, Pittsburgh, Pa., for defendant.

## OPINION

WEBER, District Judge.

Plaintiff administrator has sued defendant under the Pennsylvania Wrongful Death Act and the Pennsylvania Survival Act for the death of decedent. Defendant has moved for Summary Judgment on the following evidence established by the depositions of plaintiff's witnesses in the pretrial record.

Plaintiff's decedent had been under the care of a physician for some years prior to her death for a heart condition described as "hypertensive cardiovascularitis" a condition of high blood pressure and sclerotic blood vessels. She and her daughter were shopping at defendant's store where they selected some groceries. Decedent had selected some cheese and butter but her daughter took these back to the counter because they had a sufficient supply. They then checked out and paid for their purchases and proceeded to their automobile in the parking lot, the daughter standing on the driver's side, the mother standing on the passenger side. At the moment they were about to be seated in the car an employee of defendant appeared, grabbed the daughter's right arm and said; "I'm the security officer from Glosser's, where is the butter and cheese? You are shoplifting." The daughter replied that she had put them back where they belonged. The mother came around to the driver's side and asked what was wrong and the security

officer asked where the butter and cheese was. The daughter invited the security officer to search her and she searched the daughter's purse and bags. Both women opened their coats and the security officer asked about the pockets. With their permission she searched the pockets of their coats. The security officer then walked away. The daughter became furious and screamed after her and started to follow her but the mother said; "Come on, let's go." The daughter started to follow the security officer when the mother fell to the ground and died instantly.

Based on the description of events and the manner of death, her treating physician testified that the mother died of a coronary occlusion, which was occasioned by the excitement of the event which produced an excess supply of adrenalin causing heart spasms. Her attending physician was of the opinion that the search of her pockets did not cause the coronary occlusion and that it would have occurred had there been no such search. He did not regard the search of the pockets as a physical injury.

Defendant relies upon the depositions of plaintiff's eye witness and plaintiff's expert medical witness, and argues that accepting all their testimony as true, there is no cause of action cognizable under controlling Pennsylvania law.

■ Defendant relies on the Pennsylvania rule of law which denies damages for injuries due to emotional trauma unaccompanied by physical impact, known as the "impact rule" in Pennsylvania. Bosley v. Andrews, 393 Pa. 161, 142 A. 2d 263 [1958]; Cucinotti v. Ortmann, 399 Pa. 26, 159 A.2d 216 [1960].

In *Bosley,* supra, the Pennsylvania Supreme Court denied recovery where a bull chased a woman in a farm yard. The bull never reached her but she suffered a heart attack. The Court held:

"The rule is long and well established in Pennsylvania that there can be no recovery of damages for injuries resulting from fright or nervous shock or mental or emotional disturbances or distress, unless they are accompanied by physical injury or physical impact." (citations omitted). 393 Pa. 161, 164, 142 A.2d 263, 264.

In *Cucinotti,* supra, the defendants were charged with threats of violence and physical harm to plaintiffs unless plaintiffs left the premises, from which plaintiffs allege they suffered great emotional distress. The court held that the words or threats of themselves do not constitute an assault unless they are accompanied by some act to indicate that physical harm will ensue immediately. It further held that threatening words alone are insufficient in this jurisdiction to put a person in reasonable apprehension of physical injury or offensive touching.

In Hoffman v. Rhoads Construction Co., 113 Pa.Super. 55, 172 A. 33 [1934] recovery for a compensable accident was denied under the Pennsylvania Workmen's Compensation Act where the decedent died of a heart attack after a heated argument with his foreman on the job.

The Pennsylvania "impact" rule has been recently enlarged in Niederman v. Brodsky, 436 Pa. 401, 261 A.2d 84 [1970], where the court said:

"We today chose to abandon the requirement of a physical impact as a precondition to recovery for damages proximately caused by the tort in only those cases like the one before us where the plaintiff was in personal danger of physical impact because of the direction of a negligent force against him and where plaintiff actually did fear the physical impact." (p. 413, 261 A.2d p. 90).

The "impact rule" in Pennsylvania and in other jurisdictions has for a long time been subject to the restriction that it is only applied where there is absolutely no impact whatsoever.

"Once there is even the slightest impact, it has been held that the plaintiff can recover for any damages which resulted from the accompanying fright, even though the impact *had no*

*causal connection* with the fright-induced injuries. The rule has been stated: 'However, where, as here, a plaintiff sustains bodily injuries, *even though trivial* or minor in character, which are accompanied by fright or mental suffering directly traceable to the peril in which the defendant's negligence placed the plaintiff, then mental suffering is a legitimate element of damages.' Potere v. City of Philadelphia, 380 Pa. 581, 589, 112 A.2d 100, 104 [1955]." Niederman v. Brodsky, op. cit. p. 407, 261 A.2d p. 86.

 Was the search of decedent's pockets such an "impact" as to bring this case within the exception as applied in Pennsylvania? We think not for the following reasons:

Plaintiff's evidence shows that the search of decedent's pockets was invited or consented to by her and hence would not constitute an assault.

The act of searching was not an act intended to put decedent in reasonable apprehension of an immediate battery.

The exception speaks in terms of physical impact. The earlier cases spoke of physical injury. See Bosley v. Andrews, supra, 393 Pa. at p. 164, 142 A.2d 263 and footnote.

*Niederman,* supra, cites Restatement (Second) Torts, Sec. 436(2) as in harmony with its holding:

"(2) if the actor's conduct is negligent as creating an unreasonable risk of causing bodily harm to another otherwise than by subjecting him to fright, shock, or other similar and immediately emotional disturbance, the fact that such harm results solely from the internal operation of fright or other emotional disturbance does not protect the actor from liability."

Comment b. on Subsection (2) above explains this rule:

"The statement in this Subsection applies when the actor's conduct is negligent because of the risk that it will cause bodily harm by immediate impact or in any other manner except through the internal operation of a possible or probable emotional disturbance, and the other by good chance escapes the threatened harm but is so frightened or shocked as to miscarry or otherwise to be made ill."

Thus the new Pennsylvania rule, as the rule of Sec. 436 of the Restatement, all involve a threatened "impact" which produces fear of physical injury in the person toward whom a force is directed.

 Our conclusion is not affected by the physician's testimony that the search of the pockets did not cause the heart attack. We take this to mean that the emotional consequences would have followed the words and accusations regardless of the search and that, therefore, in his opinion, the search was not a physical injury to the decedent's person. This is not required under *Niederman* and prior cases which stated that the impact need have no causal connection with the fright induced injuries.

The Pennsylvania Supreme Court in *Niederman* has demonstrated the logical invalidity of the "impact" rule because of the advance of medical science to a point where the causal relation between nervous shock and resulting injury may be medically established. It has also demonstrated the fallacy of the rule by noting that the slightest impact, even though it has no relation to fright induced injuries will allow a plaintiff to recover for the fright-induced injuries. But it has not opened the door to allow recovery for the injuries solely resulting from the shock, absent some physical injury or the fear of immediate physical injury. Neither are present here. The search of decedent's pockets was neither a physical injury in any degree nor did it present a threat of harm.

We recognize that there is another exception to the requirement of "impact", when emotional injuries ensue, where

the defendant is guilty of a wanton and intentional act. Papieves v. Kelly, 437 Pa. 373, 263 A.2d 118 [1970], but no evidence of such conduct has been offered by the plaintiff here in response to the motion for summary judgment.

 It appears to us that any logical support which the rule once possessed has disappeared by judicial erosion and by the increased understanding of modern medicine, but our understanding of *Niederman* relaxes the requirement only where a plaintiff is placed in a position of physical danger and actually feared a physical impact. This is the law of Pennsylvania and by this we are bound in this diversity suit, despite our personal opinion that a reading of *Niederman* would indicate a further relaxation of the rule when a situation is squarely presented to that court requiring such action. We cannot envision that court, after its forthright analysis of the rule in *Niederman*, resorting to the old subterfuge of the "slightest impact" and thus hold the consented search of a coat pocket to be such a physical impact, or physical injury, or threat of physical injury as to avoid the application of the rule. We rather feel that the court will conclude that evidence which satisfies modern medical science will be sufficient proof of causal relation for modern jurisprudence.

### ORDER

And now this *1st day of June, 1971*, this matter having come before the court on Defendant's Motion for Summary Judgment, and the court, having considered the evidentiary matters offered in support of the motion, and arguments of counsel, determines that there is no genuine dispute as to issues of material fact, and that judgment should be rendered as a matter of law.

It is ordered that Defendant's Motion for Summary Judgment be granted, and Plaintiff's action is ordered dismissed.