NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 20-1028, 20-1034 and 20-1038

_____

DONNA DEITRICK

v.

MARK A. COSTA;
WILLIAM MINER; RICHARD NICHOLS;
WILLIAM ZELINSKI; SHAMOKIN POLICE DEPARTMENT;
JEFF ADAMS; MARIANNE ADAMS; THOMAS YONCUSKI;
ROBERT YONCUSKI; VANESSA LONG; LINDA L. LONG; KEVIN BALASCIK;
JAMES BROWN; DENNIS MOORE; ROBERT SEARLS; JANE M. ACRI;
CITY OF SHAMOKIN, Pennsylvania,

Thomas Yoncuski,
Appellant (No. 20-1028)

Jeff Adams, Marianne Adams,
Appellants (No. 20-1034)

Robert Yoncuski, Vanessa Long Yoncuski,
Appellants (No. 20-1038)

_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 4-06-cv-01556)
Magistrate Judge: Honorable William I. Arbuckle

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 21, 2020

Before: AMBRO, PORTER, and ROTH, Circuit Judges

(Opinion filed: March 4, 2021)

---

## OPINION[*]

---

AMBRO, <u>Circuit Judge</u>

A jury awarded Appellee Donna Deitrick approximately $3.2 million on her

claims for civil conspiracy, trespass to chattels, and conversion. The crux of her claims is

that her now-ex-husband, Appellant Robert Yoncuski, and several of his relatives (also

Appellants), conspired to steal a safe containing Deitrick's jewelry from the couple's

marital home. Appellants argue, among other things, that the District Court erroneously

instructed the jury on damages and improperly admitted testimony about the jewelry's

value that should have been collaterally estopped by the distribution of property made

during the divorce proceedings. Discerning no error calling for reversal, we affirm.

### I.

After 29 years of marriage, Deitrick filed for divorce from her husband Robert

Yoncuski ("Robert") in July 2004. The next month, on August 13, 2004, Robert decided

to remove items from the couple's marital home. He asked his sister and her husband,

Appellants Marianne and Jeff Adams, to meet him there. The home's locks had been

changed, so Robert knocked the door down. Once inside, he and Mr. Adams removed a

safe that contained jewelry belonging to Deitrick, as well as cash, loading it into Robert's

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

truck. They stored the safe on the Adams' property for the night, but the next day Robert reclaimed it. He cut a hole in the bottom of the safe and removed its contents. He then returned the empty safe to the Adams property, burying it there.

The safe was unearthed months later, in February 2005. Thereafter, some of its contents were returned to Deitrick, but she maintains that much of the jewelry was not. Accordingly, she brought this suit against Robert and the Adamses, as well as Robert's then-girlfriend (now wife) Vanessa Long Yoncuski ("Vanessa"), and Thomas Yoncuski ("Thomas"), who, according to Deitrick, were also part of the conspiracy to steal the safe.

In addition to the theft, Deitrick alleged that Vanessa physically attacked her when the two encountered each other at a police station a few days after the taking of the safe, and that she suffered injuries from the attack.

In 2007, while this suit was pending, the Court of Common Pleas of Northumberland County (the "CP Court") issued an order dividing the marital property (the "equitable-distribution order") along with findings of fact supporting that order. As to the contents of the safe, the CP Court noted that, while Deitrick maintained that "she had approximately $5 million worth of jewelry . . . and $500,000.00 in cash in the safe," she "produced little, if any, credible evidence/corroborating evidence" that would enable the Court "to place an actual value on the jewelry." App. 142. However, the CP Court noted it "believe[d] that there was significantly valued jewelry in the safe," and as a result decided to "take [this] into account . . . when determining equitable distribution." App. 142–43. The equitable-distribution order provided Deitrick with approximately 66% of

3

the marital assets, leaving the remaining 34% for Robert.  Deitrick appealed the equitable-distribution order, but the Pennsylvania Superior Court affirmed in 2010.

Nearly a decade later, in September 2019, this matter came to trial in the District Court.  Appellants—Robert, the Adamses, Vanessa, and Thomas—moved to preclude any testimony as to the value of the safe's contents, arguing that the issue was collaterally estopped by the equitable-distribution order.  The District Court denied the motion; as a result, Deitrick and a friend of hers testified at trial as to the value of the jewelry in the safe.

Following trial, the jury found in favor of Deitrick, awarding her $3,200,530.  This award included $825,000 "for contents of the safe not recovered," and $350,000 "for damages to contents of the safe that were recovered."  App. 11.  It also included "non-economic" and punitive damages.  *Id.*

Appellants moved to alter or amend the judgment, or alternatively for a new trial, under Federal Rule of Civil Procedure 59.  Among other things, they reasserted their argument for collateral estoppel and argued that several of the District Court's jury instructions as to damages were improper.  The Court rejected each argument and these appeals followed.

4

II.[1]

We begin with the argument—asserted by each of the Appellants—that the District Court erred in concluding that the equitable-distribution order did not collaterally estop the jury from considering the value of the safe's contents.

Under Pennsylvania law,[2] collateral estoppel "forecloses re-litigation in a later action . . . of an issue of fact or law which was *actually litigated* and which was *necessary to the original judgment*." *City of Pittsburgh v. Zoning Bd. of Adjustment of City of Pittsburgh*, 559 A.2d 896, 901 (Pa. 1989) (emphases added). The doctrine applies only if, among other things, (1) "the issue decided in the prior case is *identical* to one presented in the later case," and (2) "the determination in the prior proceeding was *essential* to the judgment." *Id.* (emphases added).[3]

We agree with the District Court that the issue of fact Appellants maintain is barred here—the value of the safe's contents—does not meet these two requirements. As

---

[1] Under 28 U.S.C. § 1367, the District Court had supplemental jurisdiction over the state-law claims at issue in this appeal, as they form part of the same case or controversy as federal-law claims not at issue here. We have jurisdiction under 28 U.S.C. § 1291.

[2] The preclusive effect of a state court judgment, such as the equitable-distribution order at issue here, is governed by state law. *See Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir. 1999).

[3] Robert similarly argues that res judicata (claim preclusion) bars re-litigation of the value of the safe. But claim preclusion only "precludes further action . . . on the same cause of action." *Malone v. W. Marlborough Twp. Bd. of Supervisors*, 603 A.2d 708, 711 (Pa. Commw. Ct. 1992). The causes of action at issue here—civil conspiracy, conversion, and trespass to chattels, all of which seek recovery of stolen non-marital property—are different from the cause of action presented to the CP Court, an equitable distribution of marital property. Hence this requirement for claim preclusion was not met.

that Court explained, the CP Court did not actually decide the value of the safe's contents. Instead, noting that Deitrick had "produced little, if any, credible evidence . . . for th[e] court to place an actual value on the jewelry," it found only that "there was a significant amount of jewelry in the safe[.]" App. 142–43. And while it noted that it would "take into account the fact that there was significant jewelry in the safe and that it is missing, when determining equitable distribution[,]" App. 143, we cannot conclude, as Appellants urge, that the value of the jewelry was actually decided. Nor was the exact value of the safe's contents "essential" to the CP Court's equitable-distribution order; rather, the CP Court merely took into account the fact that there was a significant amount of missing jewelry in making its equitable-distribution determination.[4] Accordingly, the District Court did not err in denying Appellants' motion *in limine*.[5]

---

[4] Appellants rely on *Chada v. Chada*, 756 A.2d 39 (Pa. Super. Ct. 2000), and *Kadel v. McMonigle*, 624 A.2d 1059 (Pa. Super. Ct. 1993). We agree with the District Court that *Chada* is distinguishable, as that case involved "re-litigat[ing] ownership of a parcel of real estate," which—unlike the value of the jewelry at issue here—had been conclusively decided in the divorce proceedings. 756 A.2d at 43. *Kadle* too is distinguishable, as it involved a dispute between former spouses about which of them owned certain real estate, a dispute that was "part of and dependent upon the marital relationship." 624 A.2d at 1062. Here the issue is not ownership of the jewelry or whether it was marital or non-marital property, but rather its value.

[5] The District Court concluded, alternatively, that Appellants forfeited any collateral-estoppel defense by failing to raise it timely following entry of the equitable-distribution order. Because we agree with the District Court on the merits, we need not reach the issue of forfeiture.

III.

We next consider whether the District Court properly instructed the jury as to damages. We review a claim that jury instructions were inadequate or misleading for abuse of discretion, reversing only where the instructions, taken as a whole, "fail[] to 'fairly and adequately' present the issues in the case without confusing or misleading the jury." *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 79 (3d Cir. 2009) (quoting *United States v. Ellis*, 156 F.3d 493, 498 n.7 (3d Cir. 1998)). But "[w]e exercise plenary review over jury instructions for *misstatements* of applicable law." *DiFiore v. CSL Behring, LLC*, 879 F.3d 71, 79 (3d Cir. 2018) (emphasis added).

Appellants contend that it was incorrect to instruct the jury it could consider, in calculating damages, that their wrongful conduct had made calculating damages more difficult. The instruction, in its entirety, was as follows:

> A defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that damages cannot be measured with the same exactness and precision as would otherwise be possible. It would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. In such case, while damages may not be determined by mere speculation or guess, it will be enough if the evidence shows the extent of the damages as a matter of just and reasonable inference, although the result only be approximate. The wrongdoer is not entitled to complain that damages cannot be measured with exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise. The risk of the uncertainty should be thrown upon the wrongdoer instead of upon the injured party. The precise amount cannot be ascertained by a fixed rule but must be [a] matter of opinion and probable estimate.

App. 241–42.

7

Appellants contend that this instruction likely "misled the jury regarding [Deitrick]'s burden of proof" as to the amount of damages, effectively allowing it to be shifted to Appellants due to their wrongful conduct. Adams Br. 14; *see also* Robert & Vanessa Br. 12 (arguing that the instruction "shift[ed] the burden of proof" as to damages); Thomas Br. 40 (same).

We disagree. As a whole, the jury instructions made clear that Deitrick—as the plaintiff—maintains the burden of proving damages. The District Court instructed the jury that "Deitrick must prove . . . damages by a preponderance of the evidence." App. 239. And the Court specifically instructed the jury that "mere speculation or guess" is insufficient to meet that burden. App. 241. The instruction at issue here merely provides that the degree of certainty in the amount of damages ordinarily required is relaxed when a defendant's conduct has made it more difficult to ascertain the amount. Accordingly, we cannot conclude that the instruction misled the jury as to the burden of proof.

Nor is the instruction a misstatement of Pennsylvania law. The District Court drew the language for the instruction from the Pennsylvania Superior Court's decision in *Judge Technical Servs., Inc. v. Clancy*, 813 A.2d 879, 885–86 (Pa. Super. Ct. 2002). Appellants maintain that the District Court improperly applied this case outside the context in which it arose. The defendants there had repeatedly and intentionally violated the trial court's discovery orders, thereby frustrating the plaintiff's efforts to prove damages. *Id.* at 886. But nothing in *Judge Technical Services* suggests its holding is limited to a defendant's misconduct in discovery—as opposed to the misconduct creating the plaintiff's claim. Indeed, the Court relied on *Story Parchment Co. v. Paterson*

8

*Parchment Paper Co.*, 282 U.S. 555, 563 (1931), which involved uncertainty in the amount damages created by the misconduct that spawned the claim—not misconduct in the course of discovery. *See Judge Tech. Servs.*, 813 A.2d at 886. Thus we cannot conclude that the District Court's instruction misstated the law.

Appellants also argue that the District Court erred in instructing the jury that it could award non-economic damages, specifically damages for pain and suffering, embarrassment and humiliation, and loss of ability to enjoy the pleasures of life. They maintain those damages are not available for claims of conversion and trespass to chattels. We conclude that this is a question of Pennsylvania law that has not yet been squarely addressed. Still, because there exists sufficient authority to justify the position that non-economic damages are available, we cannot conclude that the District Court's instruction misstated the law.

Historically, "[m]ental suffering has not generally been recognized as an element of damages for which compensation can be allowed" in Pennsylvania. *Linn v. Duquesne Borough*, 54 A. 341, 341 (Pa. 1903). Nonetheless, the Pennsylvania Supreme Court in *Linn* recognized two general exceptions: non-economic damages for mental suffering may be awarded when "directly connected with a physical injury [or] the *direct and natural result of a wanton and intentional wrong*." *Id.* (emphasis added). In the century since *Linn*, the Commonwealth has gradually moved in the direction of recognizing further exceptions to its general rule to permit recovery of non-economic damages, though primarily with respect to situations involving physical harm or fear of it. *See, e.g.*, *Sinn v. Burd*, 404 A.2d 672, 686 (Pa. 1979) (holding that a mother's claim to emotional

9

distress from being a bystander to her daughter's death "is not to be denied solely because the plaintiff was beyond the zone of physical danger . . . ."); *Niederman v. Brodsky*, 261 A.2d 84, 90 (Pa. 1970) (deciding to "abandon the requirement of a physical impact . . . where the plaintiff was in personal danger of physical impact . . . .").

Perhaps the strongest argument that could be made in support of Appellants' position is that *Linn* was effectively overruled by *Gefter v. Rosenthal*, 119 A.2d 250, 251 (Pa. 1956), which stated generally that "[t]here can be no recovery for humiliation, disappointment, anxiety, or mental suffering, or emotional distress when unconnected with physical injury or physical impact." A plausible reading of *Gefter*, therefore, would be to abrogate completely *Linn*'s second exception to the rule against non-economic damages (wanton and intentional wrongs), leaving only its first exception (physical injury) as good law. Indeed, the Court in *Gefter* explicitly rejected the plaintiff's claims that he was owed damages for mental suffering arising from a "wanton and intentional violation of [a] written agreement" involving caterers charging his guests for checking their coats. *Id.*

*Gefter*, however, dealt with emotional distress involving a broken contract in what were obviously farcical facts (the violation of an agreement not to charge 15 cents for coat checking). *Id.* Moreover, *Gefter* could just as easily be read more narrowly. Indeed, it explicitly left open whether "damages can be recovered for mental suffering arising out of a wanton and reckless breach of contract for the carriage or proper disposition of dead bodies or for breach of a contract for the delivery of death messages and similar contracts, since these cases can have no application or relevancy to the case at

10

issue." This language implies that the *Gefter* Court did not believe itself to be barring non-economic damages in all breach-of-contract cases, let alone non-contract cases involving wanton and intentional conduct. This reading would leave *Linn*'s exception for wanton and intentional conduct intact in cases far afield of the breach of contract at-issue in *Gefter*. *See Kahle v. Glosser Brothers, Inc.*, 326 F. Supp. 985, 987–88 (W.D. Pa. 1971) (recognizing, years after *Gefter*, that "there is another exception to the requirement of 'impact', when emotional injuries ensue, where the defendant is guilty of a wanton and intentional act" (citing *Papieves v. Lawrence*, 263 A.2d 118 (Pa. 1970))). And further, we note that many of the historical cases grappling with the boundaries of non-economic damages dealt with mental distress "independent of any other cause of action." *Papieves*, 263 A.2d at 121. Those cases do not speak directly to whether non-economic damages can be maintained in conjunction with a separate well-recognized cause of action such as trespass to chattels or conversion.

In the absence of clear guidance from the Pennsylvania Supreme Court, we prefer the narrower reading of *Gefter*, which better aligns with the Commonwealth's general trend toward expanding the availability of non-economic damages and the overall state of the law as described in the Restatement (Second) of Torts § 911 cmt. e. (noting that while "[c]ompensatory damages are not given for emotional distress caused merely by the loss of the things, . . . in unusual circumstances damages may be awarded for humiliation caused by deprivation, as when one is deprived of essential articles of clothing").

Here, Deitrick alleged an intentional and wanton theft of property that would naturally cause emotional distress. Indeed, she contends Appellants forcibly broke into

11

her home and took property known to have substantial value to her and then attempted to conceal their conduct in the face of court orders. App. 24–25; *see, e.g.*, *Harris v. Del., L. & W.R. Co.*, 72 A. 50, 51 (N.J. 1909) (permitting recovery of mental-distress damages caused by the willful and public taking of a railroad passenger's ticket where "the indignity [was] the natural and proximate result of the conduct of the defendant").[6] Hence Pennsylvania law is not so clear for us to hold that the District Court erred in instructing the jury as to damages for emotional distress.

IV.

Finally, we consider two arguments related to Deitrick's use at trial of a recorded telephone conversation between Robert and a representative of ADT Security. When Robert broke down the door, ADT Security called the home. Robert answered and ADT asked for the alarm code. As heard on the recording of this conversation, Robert answered, "Let me ask my girlfriend," suggesting that Vanessa was present at the break-in. App. 35. But when Robert was asked on cross-examination whether Vanessa was present, he denied it. And when asked what he told ADT when asked for the alarm code, he answered, "Let me ask my wife." *Id.* Only when the recording was played for him did he admit what he had actually said.

---

[6] Robert and Vanessa further argue that the District Court erred by submitting to the jury Deitrick's "claim for wage loss and emotional distress for the events that occurred at the [p]olice [s]tation." Robert & Vanessa Br. 20–21. But they make this argument without citing the record or any authority whatsoever. *United States v. Shaw*, 891 F.3d 441, 445 n.17 (3d Cir. 2018) ("Arguments raised in such a cursory fashion, without adequate citation to the record and authority, are deemed waived." (citing, *inter alia*, Fed. R. App. P. 28(a)(8)(A)).

12

First, Robert contends that the District Court erred in permitting Deitrick to cross-examine Robert using the recording, as Deitrick did not identify the recording as an exhibit in her pre-trial disclosures under Federal Rule of Civil Procedure 26. But Rule 26 does not require disclosure of material that a party intends to offer at trial "solely for impeachment." Fed. R. Civ. P. 26(a)(3)(A). Deitrick introduced the recording during her cross-examination of Robert, using it to impeach his testimony that Vanessa was not present during the break-in. Thus Deitrick's use of the recording did not violate Rule 26.

Second, Vanessa submits the recording was the only evidence she was present at Deitrick's home during the break-in, and that, because it was admitted only for impeachment purposes, the evidence is insufficient to establish her liability. But as the District Court explained in rejecting this argument, Vanessa need not have been present to be liable as a conspirator. Deitrick testified that she saw Vanessa wearing her jewelry, and Thomas testified that he found jewelry in his yard and gave it to Vanessa to turn over to the authorities. This evidence is sufficient to establish Vanessa's involvement in the conspiracy—regardless whether she was present at the home during the incident.

\* \* \* \* \*

For these reasons, we affirm the judgment and order of the District Court.

_____

13